14173

STATE v. LUSTER *ET AL.*

(182 S. E., 427)

*Messrs. L. E. Wooten, D. M. Field, C. S. Bowen,* for appellants,

*Messrs. J. G. Leatherwood, Solicitor, Thomas A. Wof-ford, Assistant Solicitor,* and *D. B. Leatherwood,* for the

State,

November 15, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The defendants, Luster and Hill, were convicted of the murder of E. D. Milam, and were sentenced to die by electrocution. They have both appealed to this Court from the verdict and judgment, and from the refusal of the trial Judge to grant their motion for a new trial.

The evidence for the State, as it appears in the record for appeal, tended to establish the following facts: At the time of his death, Milam was a member of the State Highway Patrol and was wearing the usual uniform, badge, and other insignia of a patrolman. He was also a State constable, having been duly commissioned by the Governor under Section 3096 of the Code "to enforce the provisions of all the criminal laws of this State." On the afternoon of the day of the homicide, December 25, 1934, a Christmas celebration was being had at the Laurel Creek Negro Church, which was approximately 200 yards from the main highway leading to Columbia by way of Simpsonville and Laurens. A schoolhouse for colored people was situated midway between the highway and the church on a private road leading from one to the other. During the celebration there was a disturbance on the grounds, caused by some of those in attendance, and certain members of the church made an effort by telephone to get the Sheriff of Greenville County to come to the scene of the trouble, but failed at first to get in touch with him. After the celebration was over, about 5 o'clock in the afternoon, an old Negro by the name of Means, an officer of the church, on reaching the highway, saw the patrolman, who was traveling on his motorcycle, and asked him to arrest those who had participated in the disturbance.

In response to the request, Milam rode by the schoolhouse
and stopped between there and the church where the Ne-
groes were gathered. He got off his motorcycle and inquired
what the trouble was and advised those present to go home.
Hill cursed him and stated that they would go home when
they got ready, and Luster told him that he did not have any
business out there, but that his place was on the highway.
The last-named defendant then took from his person a con-
cealed pistol which Milam requested that he turn over to
him. Luster refused to do so, and when the officer started
toward him he backed away; the defendant Hill being close
behind striking at Milam with an open knife. The officer
then attempted to take the pistol from Luster, and after a
"scuffle," in which they went some distance, they fell to the
ground over a terrace, and one shot was fired. They then
got up, Luster having Milam by the leg, and continued to
scuffle over the weapon. In the meantime, the defendant
Hill, having removed the motorcycle to the opposite side of
the church, returned to where the struggle was in progress.
He had two rocks in his hands, and struck the officer on the
back of the head. Milam was thrown or knocked down, Lus-
ter falling with him, and two or three shots more were fired.
Luster then ran away in the direction of the church leaving
Milam on the ground. The defendant Hill, who remained
on the spot for a moment, took the officer's pistol from the
holster in which it was contained, and from which it had
not been drawn, and also fired a shot. It was found that a
bullet had passed through Milam's neck, and that the back
part of his skull had been crushed in at least six places and
brain tissue was oozing therefrom.

The defendants left the church grounds together, and that
night pawned both pistols and escaped from Greenville
County, but were later arrested in Asheville, N. C., and
carried to the State penitentiary in Columbia. The Sheriff of
Greenville County testified that Luster had stated to him
that he had shot Milam two or three times, and that Hill
was there at the officer's back striking at him with a rock;

but that Hill, in whose presence the statement was made, denied any participation in the killing whatsoever.

On learning of Milam's death, local officers and highway patrolmen went to the scene of the trouble in an effort to apprehend the slayers, but difficulty was encountered in finding out at the time who had actually participated in the homicide. A number of those arrested would not make any statement as to the identity of the slayers, and were slapped or whipped by the officers. Some who testified for the State said they had been whipped, but that they were stating in Court the facts about the homicide regardless of any whipping that they might have received. Other State witnesses, who testified as to how the killing occurred, as above detailed, said that they had received no unkind treatment at the hands of the officers.

As to the testimony for the defendants, Luster stated that he was drinking at the celebration but was not drunk; that he did not intend to let Milam have his pistol; that they scuffled around and fell down; and that after the witness fired the last shot he got up and ran away. Hill stated that he did not get close enough to Milam to hit him, nor did he ever attempt to do so. In this claim he was corroborated, in some degree, by two witnesses who testified on his behalf.

As the case of *State v. Francis et al.*, 152 S. C., 17, 149 S. E., 348, 70 A. L. R., 1133, is largely controlling in the case at bar, counsel for the appellants asked and received permission to attack that decision, with a view to having it overruled "in so far as the presumption of the concurrence of injuries in effecting death is concerned."

We have examined with care the interesting argument of counsel, but no good reason is shown why the Court should change its mind with regard to the principles announced in the *Francis case*. The petition therefore is refused.

The appellants complain, in the first place, of the trial Court's refusal to instruct the jury as follows:

"I charge you that. (a) highway patrolman of this State may arrest without a warrant persons violating or at-

tempting to violate the highway laws of this State and relating to motor and animal drawn vehicles, but cannot arrest without a warrant any person violating or attempting violation (of other laws), taking place off of a public highway," citing Section 6004 of Code of 1932.

The specification of error is that the "request contained a sound proposition of law, applicable to the facts, the arrest being attempted by a highway patrolman off the highway, for an offense not committed upon a highway."

We do not think that the request was applicable to the facts as disclosed by the evidence. It is true that Milam, at the time he was killed, was a highway patrolman, but he was also a State constable, holding a commission from the Governor that vested him with all the powers of a peace officer of the State. There was no contention that the defendant Luster at the time was violating any highway law that would warrant his arrest under Section 6004 of the Code, or that Milam was attempting to make the arrest, or that he had any right to do so, as a highway patrolman. The prosecution relied upon the fact that he was a peace officer as showing his authority for what he attempted to do. The general charge of the trial Judge on this point was all that the appellants were entitled to. In response to the issues made by the testimony, he defined the duties of a peace officer, telling the jury, among other things, that he has the right to arrest without a warrant any person who commits a misdemeanor in his sight or hearing. He also correctly instructed them that a person would not cease to be such an officer because he was a highway patrolman. Appellants' request, if charged, would have had the effect only of confusing the jury. There was no error as complained of.

The second exception charges the Court with error "in holding that the deceased, being a State constable as well as a highway patrolman, could arrest without a warrant a person off of a highway commiting a misdemeanor."

What we said in disposing of the first exception applies here. The trial Judge held, and so instructed the jury, that Milam, under the commission given him by the Governor, was a peace officer of the State, and as such officer had the right and authority to arrest anywhere without a warrant any person committing a misdemeanor in his presence. This charge, or holding, was unquestionably correct, and was applicable under the facts of the .case. It was not denied that Milam was such an officer or that the defendant Luster was committing a misdemeanor in his presence at the time of the attempted arrest. Counsel argue, however, as Milam was clad in the uniform of a highway patrolman, it was his duty to advise the defendants that he was also a State constable; and having failed to do so the defendant Luster had the right to resist the arrest by all necessary force. In *State v. Byrd,* 72 S. C., 104, 51 S. E., 542, 543, the Court said: "As a general rule, it is the duty of an officer, in making an arrest, to state his official character and the cause of the arrest, exhibiting his warrant, if he has one; but the failure to take these precautions does not justify homicide or even physical resistance by the party arrested, without inquiry on his part as to the authority for his arrest."

Furthermore, the defendants did not interpose the plea of self-defense.

The third exception is as follows: "The Court erred in charging the law regarding accomplices, aiders and abetters." The contention is that the instructions given were not applicable, as there was no evidence from which the jury could infer that either of the defendants "aided or abetted the other, or that a conspiracy existed between them."

In *State v. Anthony,* 1 McCord, 285, the Court held: "Where several are engaged in committing a murder, it is not. material which gave the mortal blow; for where one is charged with having given a mortal blow, and others as having been present, aiding and assisting, and it comes out in evidence that he who is charged with having given the mor-

tal wound was only present aiding and abetting, and that the stroke was given by another, the indictment is well supported; for it is in law the stroke of all."

In *State v. Jenkins*, 14 Rich., 215, 226, 94 Am. Dec., 132, it was declared: "All who are present concurring in a murder are principals therein, and the death, and the act which caused it, is, in law, the act of each and of all. There is no distinction in the regard of the law, in the degrees of their guilt, or the measure of their punishment, or the nature of their offence, founded upon the nearness or remoteness of their personal agency respectively. An indictment charging it as the act of a particular individual of the party will be well sustained by evidence that any other of them gave the fatal stroke, or that it was given by some one of them, though it does not appear by which."

See, also, *State v. Francis, supra,* and authorities there cited.

The defendant Hill, in addition to his plea of not guilty, pleaded an alibi. He claimed, and so testified, that he was not present at the place where and when the actual killing took place, and did not learn of the homicide until after it had been committed. The State, on the other hand, offered testimony to the effect that Hill was present during the entire time of the struggle between Milam and Luster, and until the officer was killed, aiding Luster in whatever way he could. The testimony also shows that after the homicide the defendants fled together from the death scene, and that Hill stated that he was the only one of the whole crowd who had stayed with Luster. Under the evidence the instructions given were proper, as stating the law as to the liability of one who is present assisting another in the commission of a felony.

Appellants finally complain that the trial Judge committed error in refusing to grant a new trial upon the grounds stated in their motion, and which are renewed here by an exception:

"(1) That the verdict was speculative as to what injury caused the death of the deceased, who received two fatal injuries from different parties, there being no evidence as to which caused the death, or that the other contributed thereto.

"(2) That the court committed prejudicial error in charging the law in regard to aiders and abetters, there being no evidence of conspiracy between these defendants.

"(3) That the verdict was contrary to the law and the evidence, particularly in view of the fact that the undisputed evidence showed that the latter was whipped up, and to sustain a verdict of guilty is contrary to public policy."

As to the first specification of error, testimony for the State tended to show that both defendants participated in the death of Milam, that Luster shot him, and that Hill struck him on the back of the head with a rock and later fired a shot himself. Dr. Boggs testified that he examined the deceased and found that he had been shot through the neck and that the back part of his skull had been crushed in, and that either of the bullet wounds or the wound on the back of his head from some blunt instrument would have proved fatal; and that in his opinion the death of Milam was caused by "multiple compound fractures of the skull and bullet wound in the neck."

The case of *State v. Francis, supra,* is conclusive against the contention of the appellants. We quote here a few lines of what was there said: "This Court cannot say which of the wounds received by the deceased caused his death, nor can it say which of the wounds contributed to that death. Under the testimony of Dr. Foster, at least four of the wounds were sufficient to produce death. If either was sufficient to produce death, then that wound in all likelihood also had some effect in hastening the death of the deceased. And, too, some of the wounds not described by the physician as death wounds may have contributed in some way to the bringing about of the death of Mr. Langford. All these matters under our law were clearly for the determination of the jury. * * * 'One who inflicts an injury on another is

deemed by the law to be guilty of homicide if the injury contributes mediately or immediately to the death of such other. The fact that other causes contribute to the death does not relieve the actor of responsibility. So the physical condition of the slain man at the time when the act was done, will not excuse or minimize its consequences, if the casual connection between it and the fact of death is made to appear. * * * If two persons inflict wounds on another at different times, and the first aggravated by the second produces death, he who inflicted it will be held responsible; but if the later injury produces death, and the first, although it is the occasion of the second, does not contribute to death, the law fixes responsibility on him who dealt the subsequent blow. If at the moment of death it can be said that both injuries were contributing thereto, the responsibility rests on both of the actors. The law does not measure the effects of the several injuries in order to determine which is the more serious and which contributed in the greater measure to bring about the death. Although one of the assailants may be said to have contributed to death in a less degree than the other, he is not for that reason deemed to be less guilty or less punishable.' "

So, in the case at bar, the question of how Milam came to his death, and who was responsible therefor, were matters, under the evidence, entirely for the jury.

The question raised by the second ground of the motion for a new trial has been disposed of by what we have said in our consideration of the third exception, and will not be discussed further.

As to the third specification of error, the solicitor admits that some of the witnesses for the State were whipped by the officers on the day following the homicide, but contends that this did not affect the competency of the testimony of such witnesses for the reason that they stated on the stand that, regardless of any treatment they may have received at the hands of the officers, they were then relating the true facts concerning the homicide.

The trial Judge, in his charge to the jury, told them that, "when an officer who has somebody in his charge uses corporal punishment upon him, he violates the law. That is the law of the land; and I declare it to you." He also told them that they should determine "whether or not under all the facts and all the circumstances a witness has told you the truth. You will take into consideration the environment of that witness, any pressure which may have been brought to bear on him, all those matters."

While such conduct on the part of officers cannot be too strongly condemned, this Court does not feel, when all the evidence contained in the record is considered, that a new trial should be granted for that reason. In addition to the statement of these witnesses, that they were relating on trial the true facts concerning the homicide, the testimony of other witnesses, who stated that they had received no unkind treatment at the hands of the officers, was sufficient to take the case to the jury on the factual issue of the killing and who was responsible therefor. Furthermore, the defendant Luster, according to testimony for the State, as we have said, made a voluntary statement to the officers as to what occurred on the church grounds, and in which he admitted the shooting. Hill testified that Luster's statement was made in his presence, but claimed that so much of it as related to Hill was untrue.

Because of the serious plight of the appellants, the Court has read and re-read with painstaking care the entire record, and has given much consideration and thought to the contentions of counsel. We are satisfied that the defendants received a fair and impartial trial. The experienced and just Circuit Judge, in a very clear charge, was careful to fully safeguard their rights. They were represented here and in the Court below by able and resourceful counsel. A jury of their countrymen, however, upon whom rested the duty of determining the truth of the charge made in the indictment, have said that they are guilty of murder; and no good rea-

son has been shown why this Court should interfere with their verdict.

All exceptions, therefore, are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.