PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GERARDO AGOSTO AGOSTO, Defendant and Appellant.

No. 5708. Argued June 8, 1936.—Decided July 24, 1936.

*Fiddler, Córdova & McConnell* and *José G. González* for appellant.
*R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Justice Hutchison delivered the opinion of the Court.

Agosto was convicted of a violation of Section 328 of the Penal Code on an information which reads in part as follows:

"The prosecuting attorney files information against Manuel Román, Gerardo Agosto Agosto, Gregorio Muñoz, Rodrigo Pedraza and Enrique Alejandro, for a violation of Section 328 of the Penal Code (felony) committed in the following manner:

"On January 6th, 1933, within the jurisdiction of Caguas, in the Judicial District of Humacao, P. R., when automobile No. P.-317, driven by Manuel Román, was travelling on the Carretera Central which leads from San Juan to Humacao, while locomotive No. 13 (handled by Gerardo Agosto Agosto, Gregorio Muñoz and Rodrigo Pedraza, as engineer, conductor and fireman respectively, charged then and there with the duty of directing the movements thereof) was passing over the grade-crossing which intersects the road and while the automobile driven by the accused, Manuel Román, was approaching the grade-crossing, and the accused Enrique Alejandro was acting as flagman at said grade-crossing, each and every one of them, then and there, illegally, carelessly, negligently and through gross recklessness in the operation and control of the locomotive as well as the automobile already mentioned, that is: the accused Manuel Román, driving the car at an excessive speed, without using the claxon, or the horn, or any other warning device, and without taking the necessary precautions for ascertaining whether a locomotive was approaching when the car was about to cross the grade crossing, the accused, Gerardo Agosto Agosto, as engineer, charged with the duty of directing the movements of said locomotive No. 13, without blowing the whistle or ringing the bell, or procuring any other person to do so, without giving any warning of the approach of said locomotive to the grade-crossing, and without ascertaining

whether any car was approaching said crossing, the accused Gregorio Muñoz, as conductor of said locomotive, without blowing the whistle or ringing the bell, without giving any warning when the locomotive was approaching the crossing, or procuring any other person to give such warning, and without ascertaining whether any car was approaching the crossing, the accused, Rodrigo Pedraza, as fireman of said locomotive, without either blowing the whistle or ringing the bell, without giving any warning when the locomotive was approaching the crossing and without ascertaining whether any car was approaching the crossing and finally, the accused Enrique Alejandro, flagman at said crossing, without giving any signals or warnings at the appropriate time to the locomotive of the approach of the automobile driven by Manuel Román, or to the automobile, of the approach of said locomotive, without placing any chains or gates at the grade-crossing, so as to stop or prevent the approach of any car travelling on said road and particularly, of the car driven by the accused, Manuel Román, and acting thus, each and everyone of the accused, then and there, through negligence, carelessness and gross recklessness in the performance of the acts already mentioned, allowed said locomotive No. 13 and said automobile No. P.-317 to collide with each other, as a result of which collision the passenger Amelia Zoya de Díaz, who was riding in said automobile, suffered serious injuries which immediately caused her death.''

Román demanded and obtained a separate trial. When the instant case was called for trial the action was dismissed as to Pedraza with the consent of the district attorney. Muñoz and Alejandro were acquitted.

The English text of Section 328, as amended in 1916 (Laws, p. 105) provides that: ''Every engineer, . . . or other person having charge wholly or in part of any locomotive or automobile, . . . . who 'through gross negligence or carelessness, suffers or causes the same to collide with another' locomotive or automobile, 'or with any other object or thing whereby the death of a human being is produced, is punishable by imprisonment in the penitentiary for a maximum term of five years.' '' In the Spanish version the words ''through gross negligence or carelessness'' appear as *''por imprudencia temeraria o descuido.''*

■ The district judge charged the jury as follows:

"Section 328 of the Penal Code, the violation of which is alleged, establishes two ways in which it may be infringed, which are: through gross negligence or through carelessness. Both ways of infringement involve negligence.

"Negligence is the voluntary breach of a duty owed by a person to another, under certain circumstances which imply gross negligence or carelessness and it is presumed that this gross negligence or carelessness exists when a person who is driving either an automobile or a locomotive does so without observing the rules laid down by the law with the purpose of avoiding harm to others.

"Every person who drives an automobile or a locomotive should do so with due care and circumspection, always trying, at any time, to avoid doing harm to others. And the legislator has provided that any person driving a motor car on a public road in Puerto Rico, has no greater right than any other person to use that road, and in this situation, the person who drives the motor car is under the duty of taking all necessary precautions prescribed by law, in order to avoid harm to others.

"In this case malice is never a factor, and even the will is not a factor; the offense is completed through the breach of a duty, that is, through gross negligence or through carelessness in the performance of any legal act, as for example, when a person, through his negligence and carelessness, permits a locomotive to collide with an automobile, or with any object or thing, such collision resulting in the death or harm of a third persons."

Here the court told the jury in substance and effect that any carelessness or omission of duty, whether amounting to gross carelessness or not, would suffice to justify a verdict of guilty. The charge was, to that extent, misleading and prejudicial.

■■ The judge also charged the jury in part as follows:

"The law in Puerto Rico which regulate the movement of railroads across the public roads of Puerto Rico, provides:

"Every public service railroad company is under the duty of establishing and maintaining chains, gates or bars or other suitable protective devices in all grade-crossings of insular public roads and at all other public crossings.

"Subject to the rules of the Public Service Commission, all public service railroads should fence or otherwise properly guard or protect its tracks, so as to keep animals from entering such tracks; should keep its rolling stock, tracks and equipment in good condition, adequate for the safety of its passengers, employees and the public in general; should provide its locomotives with bells and whistles which shall be used upon approaching curves, tunnels and road or street crossings, whenever necessary as a warning of the approach of such locomotives.

"And the law of 1917 provides that a railroad company should construct and maintain chains, gates, or other suitable protective devices at all grade-crossings of insular public roads and at all such other public crossings as the commission may designate and subject to rules, regulations and orders of the commission, to fence in or otherwise properly guard or protect its tracks at such places as the commission may designate, so as to keep animals from entering upon such tracks; to provide its locomotives with bells and whistles which shall be used upon approaching curves, tunnels and roads or street crossings, and whenever necessary as a warning of the approach of such locomotives and trains which shall reduce their speed to a minimum on street crossings.

"The prevailing legislation upon this matter imposes upon the service companies, and hence, imposes upon the employees of said companies in charge of the immediate running or operation of said railroads, locomotives, trains or wagons, the duty of using bells and whistles as a warning of the approach of said trains, wagons or locomotives, upon approaching curves, tunnels and road or street crossings, and whenever necessary. This is an obligation imposed for the sake of public safety."

Public service companies, as defined by the Public Service Act (No. 70) of 1917 (Laws, page 432, Vol. II), as far as we are now concerned with the statutory definition are:

" . . . such natural persons or bodies corporate as may engage in Puerto Rico in any of the following pursuits or businesses:

"(a) Transportation of persons or freight using in whole or in part marine, fluvial or land routes."

The railroads referred to in subdivision (q) of Section 3 of the Public Service Act are, of course, common carriers.

In the instant case there was nothing to show that the United. Porto Rico Sugar Company, owner of the locomotive in question, was a common carrier or "a public service company." In any event, neither the engineer nor either of the other defendants was responsible for the failure of the United Porto. Rico Sugar Company to provide and maintain chains or gates. "or other suitable protective devices" at the grade-crossing; in question. This we think should have been clearly pointed out to the jury.

We have not overlooked the fact that, as far as Agosto was concerned, this statute imposed upon him no greater or other duty than that already imposed upon him by general principles of the law of negligence applicable to cases of this kind. It may be and is conceded also that the judge did not intend to tell the jury that Agosto was responsible for anything beyond his duty to blow his whistle and ring his bell. More than once, however, the fact was brought out in the testimony for the prosecution that at the time of the accident there were no chains at the crossing because the hooks on an iron post formerly used to support the chains had been broken and that the use of chains had been resumed after the accident. The district judge also mentioned this fact while summing up the testimony in his charge to the jury. We are unable to say that the charge concerning the duties imposed on the common carriers by the Public Service Act was not, as given, prejudicial error.

■ A more serious error was committed in charging the jury as to the causal connection between Agosto's alleged negligence or carelessness and the collision. The judge said:

"The defendant has set forth the theory of absolute lack of guilt on the part of the defendants because they have not been guilty of gross negligence, nor of negligence nor of carelessness in the operation of the locomotive, inasmuch as they have complied with all the requisites of the law as to the manner of going through that grade-crossing; they sounded the bells and whistles, there was one person,

the flagman, who warned those who were coming on the road, before approaching the locomotive.

"The theory of the defense is that the only cause of the death of the lady, which was the result of the accident, was solely and exclusively the negligence of the chauffeur who was driving the automobile in which she rode. So, it has not been alleged that there was any contributory negligence, but that there has been an absolute negligence on the part of the other person, as the result of which the accident occurred.

"It would be worth while for the jury to note that the defendants do not impute negligence to the person who died, but they rather allege negligence on the part of a third person who did not die, that is, the chauffeur of the automobile in which the decedent was riding.

"If the gentlemen of the jury reach the conclusion that the defendants were negligent and careless, or grossly negligent when the accident occurred, even if the jury also reaches the conclusion that the chauffeur who drove the automobile at the time of the accident was also negligent, the negligence of the chauffeur would not release the defendants from any criminal responsibility, provided that the jury also believe that the defendants were negligent. The contributory negligence of a third person does not free the defendants from criminal responsibility when the defendants were also negligent, provided that the jury reaches this conclusion.

"The gentlemen of the jury should remember that Amelia Zoya, the person who was killed, was not in charge of the movements or operation of the automobile, but that the operation of the car was in charge of a chauffeur named Manuel Román, according to the information.

"Negligence is the characteristic of these two circumstances, lack of care and lack of circumspection. A person who performs an act without due care and without circumspection, can be said to be a negligent person, a careless person, a person who is not solicitous or careful as to his duties and who, due to this carelessness or gross negligence or negligence, caused harm to a third person.

"It constitutes carelessness or negligence not to attain for the protection of the interests of another person, that degree of care, protection and vigilance which the circumstances justly require, and as a consequence of which lack of care and vigilance another person suffers harm.

"If the jury reaches the conclusion that the only cause of the accident was the negligence of the chauffeur who drove the automobile, and that the defendants in no manner omitted to fulfill their duties, nor committed any negligent act connected with this accident, the jury can not declare these defendants guilty of any crime. They could only hold them guilty if the jury, beyond any reasonable doubt, found or reached the conclusion, as a proven fact, that the defendants were negligent and did not fulfill the duties imposed on them by the law for the purpose of protecting the life of others in a situation such as has been proved in this case."

Here again the judge assumed and left the jury free to act upon the assumption that proof of carelessness, not amounting to gross carelessness, or proof of negligence, not amounting to gross negligence, was enough to warrant a verdict of guilty. The outstanding fact, however, is that this portion of the charge ignored the question of proximate cause. This was a pivotal point. The defendant's negligence or carelessness, in a case of this kind must not only be gross negligence or carelessness but it must be the proximate cause or at least a proximate cause of the collision. 29 C. J. 1154, sec. 141; *Dunville* v. *State,* 123 N. E. 689; *People* v. *Barnes,* 148 N. W. 400; *Copeland* v. *State,* 285 S. W. 565; *Goodman* v. *Commonwealth,* 151 S. C. 168; *State* v. *Luster,* 182 S. C. 429; *Osteen* v. *Atlantic Coast Line R.,* 112 S. E. 352.

The opinion of this Court in *People* v. *Francis,* 19 P.R.R. 659 (followed in the recent case of *People* v. *Pagán,* 49 P.R.R. 423) rightly construed as a whole in the light of the facts before the court at the time, does not militate strongly against the view here expressed.

The information seems to assume that there may be two or more proximate causes and there are some cases which tend to support this view. See: *State* v. *Luster,* 182 S. E. 427; and 29 C. J. 1078, sec. 54. We shall no stop now to discuss this aspect of the case.

We have not overlooked the danger of introducing into jury trials instructions concerning the modern doctrine of proximate cause, or what has been called in a recent treatise

the "myth" of proximate cause. If, however, the district courts will remember that the question of proximate cause is largely a question of fact and always a question of common sense, they may avoid the pitfalls of elaborate exposition.

There was testimony tending to show that the flagman appeared at the crossing at approximately the same time as did the locomotive and that, in order to avoid being caught and crushed between the car and the locomotive before he could unwrap his flag, he had to jump or run from the spot where he was preparing to give the customary signals. If the jury believed this testimony, they might have found, under proper instructions, that the proximate cause of the collision was the failure of the flagman to give a proper and timely warning, notwithstanding any negligence or carelessness on the part of the engineer. The fact that the flagman was acquitted does not necessarily mean that the jury was convinced of his freedom from all responsibility. There was testimony tending to show that he was an elderly, underpaid employee who, while in the proper performance of his duty shortly before the trial, had been struck and seriously injured by a truck, had not recovered from his injuries at the time of the trial and had been replaced by another flagman. These circumstances no doubt made a strong appeal to the sympathy of the jury. On the other hand, if the jury did not believe the testimony of several passengers who were riding in the Buick (most of whom had already filed suits for damages) as to the negligence of the flagman, then there was no reason why the jury should have attached much importance to the statement of these same witnesses that they did not hear the blowing of a whistle or the ringing of a bell in the teeth of the testimony of at least two apparently disinterested eye-witnesses to the effect that the engineer did blow his whisle and did ring his bell.

Again, if the jury belived certain testimony tending to show that the flagman was at his post in ample time before

the accident, signalling with a red flag to the driver of the car to stop and signalling with a white flag to the engineer to proceed, then they might have found, under proper instructions, that the proximate cause of the collision was the negligent failure of the car driver to observe and obey the danger signal.

The accident occurred on the outskirts of Caguas at a grade-crossing over a much travelled thoroughfare, the main insular highway between San Juan and Ponce. Under proper instructions the jury might have found that the failure of the United Porto Rico Sugar Company to replace the broken hooks and to provide and maintain chains or some other adequate barrier, or a more dependable flagman, at the grade-crossing was the proximate cause of the collision, notwithstanding the gross negligence or carelessness of the engineer or of the flagman or of both the engineer and the flagman.

■ The cumulative effect of the errors committed by the district judge in his charge to the jury is too serious to be ignored. The rule that errors in the instructions as given to the jury will not be noticed on appeal when no exception has been taken, and the district judge had thus been deprived of an opportunity to correct his mistakes, has no application to a case of this kind.

Our only doubt has been as to whether the case should be remanded or whether the defendant should be discharged. Inasmuch as there may be some room for a difference of opinion as to whether or not the defendant should be subjected to a new trial, we are inclined to leave this question to the district attorney's sound judgment and sense of fairness. Having decided upon this course, we abstain from any further discussion of the evidence.

The judgment appealed from must be reversed and the case will be remanded for further proceedings not inconsistent herewith.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.