EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GERARDO AGOSTO AGOSTO, acusado y apelante.

Núm. 5708.—*Sometido:* Junio 8, 1936. *Resuelto:* Julio 24, 1936.

*Fiddler, Córdova y McConnel,* y *José G. González,* abogados del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

Agosto fué convicto de infringir el artículo 328 del Código Penal a virtud de una acusación que lee en parte como sigue:

"El Fiscal formula acusación contra Manuel Román, Gerardo Agosto Agosto, Gregorio Muñoz, Rodrigo Pedraza y Enrique Alejandro por infracción al artículo 328 del Código Penal (*felony*), cometido de la manera siguiente:

"El día 6 de enero de 1933, en jurisdicción de Caguas del Distrito Judicial de Humacao, P. R. en ocasión en que por la Carretera

Central que conduce de San Juan a Humacao caminaba el automóvil No. P-317, manejado por Manuel Román, al mismo tiempo que una locomotora No. 13, conducida por los acusados Gerardo Agosto Agosto, Gregorio Muñoz y Rodrigo Pedraza, como maquinista, conductor y fogonero, respectivamente, de dicha locomotora, encargados allí y entonces de los movimientos y dirección de la misma, cruzaba el paso a nivel que intercepta dicha carretera, y en el momento en que al mismo se acercaba el automóvil guiado por el acusado Manuel Román, actuando como guardabarreras en dicho paso a nivel en ese momento el acusado Enrique Alejandro; todos y cada uno de los acusados, allí y entonces, ilegalmente, por descuido, negligencia e imprudencia temeraria en el manejo y dirección, tanto de la locomotora como del automóvil antes mencionados, a saber: el acusado Manuel Román corriendo el automóvil que manejaba a una velocidad excesiva, sin tocar claxon, ni bocina, ni aparato de alarma de clase alguna, y sin tomar las precauciones necesarias para cerciorarse si se acercaba alguna locomotora al intentar cruzar dicho paso a nivel; el acusado Gerardo Agosto Agosto, encargado como maquinista de los movimientos y dirección en general de la susodicha locomotora No. 13, sin tocar o hacer que se tocara pito, ni campana, ni se diera aviso de clase alguna de la aproximación de dicha locomotora al cruce del paso a nivel, y sin cerciorarse de si se acercaba o no a dicho sitio vehículo alguno; el acusado Gregorio Muñoz, como conductor de la referida máquina o locomotora, sin tocar pito, ni campana, ni dar o hacer que se diera aviso de clase alguna al acercarse la locomotora al precitado paso a nivel, ni cerciorarse de la aproximación a tal sitio de vehículo alguno; el acusado Rodrigo Pedraza, como fogonero de dicha locomotora, también sin tocar pito, ni campana, ni dar o hacer que se diera aviso en forma alguna, y sin cerciorarse a sí mismo de la aproximación a dicho paso a nivel de vehículo alguno; y por último, el acusado Enrique Alejandro, guardabarreras en dicho paso a nivel, sin hacer señales o dar aviso en forma alguna oportunamente, ni a la citada locomotora, de la aproximación del automóvil manejado por Manuel Román, ni a éste de la aproximación de la locomotora indicada, sin que pusiera barrera de clase alguna a través de dicho paso a nivel para detener o evitar la aproximación al mismo de cualquier vehículo en tránsito por dicha carretera, y en particular del que era manejado por el acusado Manuel Román; y así actuando todos y cada uno de los acusados, allí y entonces, por negligencia, descuido e imprudencia temeraria en el ejercicio de los actos antes referidos, dejaron que la locomotora No. 13 y el automóvil No. P-317

mencionados chocaran entre sí, como resultado de cuyo choque la pasajera Amelia Zoya de Díaz, que viajaba en el automóvil citado, sufrió lesiones graves que le ocasionaron la muerte allí y entonces.''

Román solicitó y obtuvo un juicio separado. Al ser llamado el presente caso para juicio el mismo fué archivado en cuanto a Pedraza, con el allanamiento del fiscal de distrito. Muñoz y Alejandro fueron absueltos.

La versión inglesa del artículo 328, según fué enmendada en 1916 (leyes de ese año, pág. 105) dispone que: ''Every engineer, .... or other person having charge wholly or in part of any locomotive or automobile, .... who 'through gross negligence or carelessness, suffers or causes the same to collide with another' locomotive or automobile, 'or with any other object or thing whereby the death of a human being is produced, is punishable by imprisonment in the penitentiary for a maximum term of five years.' '' En la versión española las palabras *''through gross negligence or carelessness''* aparecen como ''por imprudencia temeraria o descuido.''

■ El juez de distrito instruyó al jurado del siguiente modo:

''El artículo 328 del Código Penal, que es el que se alega infringido, establece dos formas o modalidades de cometerlo, a saber: una por imprudencia temeraria, y otra, por descuido. Ambas modalidades envuelven negligencia.

''Negligencia es la voluntaria infracción de un deber en que una persona se encuentra con respecto a otra en determinadas circunstancias que implican una imprudencia temeraria o descuido, y se presume que existe esa imprudencia temeraria o descuido cuando una persona que guía uno de estos vehículos, un automóvil o un ferrocarril, lo hace dejando de observar los preceptos que la ley le impone para impedir daño a un semejante.

''Toda persona que maneja un vehículo de motor, o una locomotora, deberá hacerlo con la debida prudencia y circunspección, debiendo impedir en cualquier momento por el ejercicio de esa prudencia y circunspección, oportunamente ejercitadas, cualquier daño a cualquier semejante. Y el legislador ha dispuesto que toda persona que transite por un camino público en Puerto Rico, conduciendo un

vehículo de motor, no tiene más derecho que cualquiera a transitar por ese camino público y en esa situación la persona que maneja el vehículo de motor está obligada a la observancia de todas las precauciones necesarias para evitar el daño que a ese respecto la ley le impone con sus semejantes.

"En estos casos nunca interviene la malicia, ni siquiera la voluntad; el delito se completa con la inobservancia de un deber, o sea, por imprudencia temeraria o descuido en el ejercicio de cualquier acto legal, como lo es el que una persona permita que por su negligencia y descuido una locomotora pueda chocar con un automóvil, o cualquier objeto o cosa, y como consecuencia de ese choque resulte la muerte o el daño de una tercera persona."

Aquí la corte instruyó al jurado en substancia y efecto que cualquier descuido u omisión de deber, ora los mismos equivalieran a un descuido craso o no, bastaría para justificar un veredicto condenatorio. La instrucción a ese respecto inducía a error y era perjudicial.

■■ La corte también instruyó al jurado en parte como sigue:

"La ley en Puerto Rico que regula la marcha de ferrocarriles a través de los caminos públicos de Puerto Rico, dice:

"Toda compañía de ferrocarriles de servicio público viene obligada a establecer y conservar cadenas, barreras u otros medios adecuados de protección, en todos los pasos a nivel de las carreteras públicas insulares y demás cruces públicos.

"Con sujeción a reglas de la Comisión de Servicio Público, todos los ferrocarriles de servicio público, deberán cercar o en otra forma defender o proteger de manera adecuada sus vías, a fin de evitar la entrada de animales a las mismas; deberán mantener su material rodante, vías y equipo en buenas condiciones y adecuados para la seguridad de sus pasajeros, empleados y del público en general; deberán usarse silbatos y campanas, de que deberán estar provistas las locomotoras, al aproximarse a curvas, túneles y los sitios donde crucen caminos o calles, cuando quiera que fuere necesario para advertir la proximidad de tales locomotoras.

"Y por la ley de 1917 se establece el precepto legal de que, cuando se tratare de una compañía de ferrocarril, ésta deberá construir y conservar cadenas, portones u otros aparatos adecuados de protección, en todos los cruces a nivel de las carreteras públicas in-

sulares y en los demás cruces públicos que la Comisión designare y, con sujeción a las reglas, reglamentos y órdenes de la comisión, deberá cercar o de otra manera adecuada guardar o proteger sus vías, en aquellos sitios que la Comisión designare, de modo que los animales no puedan entrar en ellas; deberá instalar en sus locomotoras campanas y silbatos que deberán usarse al acercarse a curvas, túneles y a los cruces de caminos o calles y siempre que fuere necesario como advertencia de la aproximación de dichas locomotoras y trenes, los que reducirán la velocidad al mínimum en los cruces de calles.

"Es un deber que impone la legislación actual sobre la materia a las compañías de servicio público, y por tanto impuesto a las personas empleadas en dichas compañías a cargo del funcionamiento inmediato de dichos ferrocarriles, locomotoras, trenes o vagones, el de usar campanas y silbatos para dar advertencia de la aproximación de dichos trenes, vagones o locomotoras, al acercarse a curvas, túneles y a los cruces de caminos o calles, y además, siempre que fuere necesario. Ésta es una obligación impuesta en beneficio de la seguridad pública."

Las compañías de servicio público, según son definidas por la Ley (núm. 70) de Servicio Público de 1917 (leyes de ese año, pág. 433, tomo II), en tanto en cuanto la definición estatutaria de las mismas nos concierne, son:

". . . las personas naturales o jurídicas que se dediquen en Puerto Rico a cualesquiera de los fines o negocios siguientes:

"(a) Transporte de personas o carga utilizando en todo o en parte las vías marítimas, fluviales o terrestres."

Los ferrocarriles a que se hace referencia en el inciso (q) del artículo 3 de la Ley de Servicio Público, son, desde luego, porteadores públicos. En el presente caso nada hay que demuestre que la United Porto Rico Sugar Company, dueña de la locomotora en cuestión, fuera un porteador público o "una compañía de servicio público". Sea ello como fuere, ni el maquinista ni ninguno de los otros acusados era responsable de que la United Porto Rico Sugar Company dejara de construir y conservar cadenas o portones "u otros aparatos adecuados de protección" en el cruce a nivel en cuestión. Esto, a nuestro modo de ver, debió haberse indicado claramente al jurado.

No hemos pasado por alto el hecho de que en lo que a Agosto se refería, este estatuto no le imponía ningún otro deber o un deber mayor que el ya impuesto por los principios generales de la ley de negligencia aplicables a casos de esta índole. Podría también admitirse, y se admite, que el juez no tuvo la intención de decir al jurado que Agosto era responsable de otra cosa que no fuera de su deber de tocar el pito y la campana. Sin embargo, más de una vez salió a relucir en la prueba de cargo el hecho de que al momento del accidente no había cadenas en el paso a nivel porque los ganchos en un poste de hierro que anteriormente se utilizaban para sostener las cadenas se habían caído y que el uso de cadenas se había reanudado después de ocurrido el accidente. El juez de distrito también mencionó este hecho mientras hacía un resumen del testimonio en sus instrucciones al jurado. No estamos en posición de decir que la instrucción relativa a los deberes impuestos a porteadores públicos por la Ley de Servicio Público no fuera, en la forma dada, un error perjudicial.

■ Un error más serio fué cometido al instruir al jurado sobre la relación causal entre la supuesta negligencia o descuido de Agosto y la colisión. El juez dijo:

"Se ha aducido por la defensa la teoría de la inocencia absoluta de los acusados porque ellos no fueron culpables ni de imprudencia, ni de negligencia, ni de descuido en el funcionamiento de la locomotora, ya que ellos cumplieron con todos los requisitos que la ley imponía al cruzar con la locomotora por ese sitio: tocaron silbato, tocaron la campana, y que, además, había una persona, el guardabarreras, que dió aviso a los que venían por esa carretera antes de aproximarse la locomotora.

"La teoría de la defensa es que la causa única de la muerte de la señora que resultó muerta en este accidente se debió exclusivamente a la negligencia del 'chauffeur' que guiaba el automóvil en que ella venía. De manera que no se ha alegado que existiera negligencia contributiva, sino la negligencia absoluta de otra persona, como consecuencia de la cual ocurrió el accidente.

"Es bueno que se fijen también los señores del jurado que la defensa no imputa negligencia a la persona que resultó muerta, sino

la negligencia de una tercera persona que no resultó muerta, es decir, del 'chauffeur' del automóvil en el cual venía esa persona.

"Si los señores del jurado llegan a la conclusión de que los acusados fueron negligentes y descuidados o temerarios en el momento de ocurrir el accidente, aun cuando los señores del jurado lleguen también a la conclusión de que el 'chauffeur' que guiaba el automóvil en el momento del accidente fué también negligente, la circunstancia de la negligencia de ese 'chauffeur' no exime en forma alguna de responsabilidad penal a los acusados, siempre que los señores del jurado entiendan que ellos fueron también negligentes. La negligencia contributoria de una tercera persona no los exime de responsabilidad penal cuando los acusados fueron también negligentes; en caso de que a esa conclusión llegaren los señores del jurado.

"Deben recordar los señores del jurado que Amelia Zoya, la persona que resultó muerta, no estaba encargada de los movimientos del automóvil, sino un 'chauffeur' de nombre Manuel Román, según reza la acusación.

"La negligencia es la característica de estas dos circunstancias: de la falta de prudencia y de la falta de circunspección. Una persona que ejerce un acto sin la debida prudencia, sin circunspección, puede decirse que ha sido una persona negligente, una persona descuidada, una persona poco solícita de sus deberes y que, debido a ese descuido, a esa imprudencia, a esa negligencia, fué que ocasionó el daño a una tercera persona.

"Constituye descuido o negligencia, el dejar de observar para la protección de los intereses de otra persona, aquel grado de cuidado, de protección y vigilancia que justamente requieren las circunstancias y por consecuencia de lo cual otra persona sufre algún daño.

"Si los señores del jurado llegan a la conclusión de que la única causa del accidente fué la negligencia del 'chauffeur' que guiaba el automóvil, y de que los acusados en nada incumplieron con sus deberes, ni cometieron acto alguno de negligencia conectado con este accidente, los señores del jurado no pueden declarar culpables a estos acusados de delito alguno. Solamente podrían declararlos culpables si los señores jurados entendieren, fuera de duda razonable, y llegaren a la conclusión como un hecho probado, que fueron negligentes y no cumplieron con los deberes que la ley les imponía para proteger la vida ajena en una situación como los hechos demuestran en este caso.''

A este respecto el juez una vez más asumió y dejó al jurado en libertad para actuar sobre la asunción de que prueba de descuido que no equivalga a descuido craso, o de

que prueba de negligencia no equivalente a negligencia crasa, bastaba para justificar un veredicto condenatorio. Empero, el hecho saliente es que esta parte de la instrucción pasó por alto la cuestión de causa próxima. Este fué un punto primordial. La negligencia o descuido del acusado en un caso de esta naturaleza no sólo han de .ser negligencia o descuido crasos sino que deben ser la causa próxima o por lo menos una causa próxima del choque. 29 C. J. 1154, sec. 141; *Dunville* v. *State*, 123 N. E. 689; *People* v. *Barnes*, 148 N. W. 400; *Copeland* v. *State*, 285 S. W. 565; *Goodman* v. *Commonwealth*, 151 S. C. 168; *State* v. *Luster*, 182 S. C. 429; *Osteen* v. *Atlantic Coast Line R. Co.*, 112 S. E. 352.

La opinión de este tribunal en el caso de *Pueblo* v. *Francis*, 19 D.P.R. 692 (seguido en el caso reciente de *Pueblo* v. *Pagán*, 49 D.P.R. 436), e interpretado acertadamente en su totalidad a la luz de los hechos que la corte tenía ante si en aquel entonces, no milita fuertemente contra el criterio aquí expresado.

La acusación parece asumir que pueden haber dos o más causas próximas, y existen algunos casos que sostienen este criterio. Véanse: *State* v. *Luster*, 182 S. E. 427; y 29 C. J. 1078, sec. 54. No nos detendremos ahora para discutir este aspecto de la cuestión.

No hemos pasado por alto el peligro de dar en el curso de un juicio por jurado instrucciones relativas a la doctrina moderna de causa próxima o lo que en un tratado reciente se ha calificado como el "mito" de la causa próxima. Empero, si las cortes de distrito recuerdan que la cuestión de causa próxima es principalmente una de hecho y siempre una de sentido común, ellas pueden evitar el riesgo de hacer una exposición elaborada.

Hubo prueba tendente a demostrar que el guardabarrera se situó en el cruce aproximadamente al mismo tiempo que la locomotora y que con el fin de evitar ser cogido y despachurrado entre el automóvil y la locomotora antes de que pudiera desenvolver la bandera, tuvo que brincar o correr del sitio

en que se preparaba para hacer la señales acostumbradas. Si el jurado creyó este testimonio quizá hubiera concluído, teniendo las debidas instrucciones, que la causa próxima del choque lo fué el haber dejado el guardabarrera de dar un aviso adecuado y oportuno, no obstante cualquier negligencia o descuido por parte del maquinista. El hecho de que el guardabarrera fuera absuelto no significa necesariamente que el jurado estuviera convencido de que él estaba exento de toda responsabilidad. Hubo testimonio que tendía a probar que él era un anciano, mal retribuído, que mientras se hallaba en el debido cumplimiento de sus deberes poco antes del juicio había sido arrollado y seriamente lesionado por un autocamión, que no había sanado completamente de sus lesiones al tiempo del juicio, y que había sido sustituído por otro guardabarrera. Estas circunstancias sin duda alguna apelaron fuertemente a la simpatía del jurado. Por otra parte, si el jurado no creyó el testimonio de varios pasajeros que iban en el automóvil Buick (muchos de los cuales ya habían radicado pleitos de daños y perjuicios) sobre la negligencia del guardabarrera, entonces no existía razón alguna por la cual el jurado debió haber dado mucha importancia a la aseveración de estos mismos testigos de que no oyeron que se tocara pito o campana, ante el testimonio de por lo menos dos testigos oculares aparentemente desinteresados, al efecto de que el maquinista sí tocó pito y campana.

Además, si el jurado creyó cierto testimonio tendente a demostrar que el guardabarrera se hallaba en su sitio con suficiente antelación al momento del accidente, haciendo señales con una bandera roja al conductor del vehículo para que se detuviera, y con una blanca al maquinista para que continuara, entonces el jurado pudo haber concluído, si se le hubiesen dado las instrucciones debidas, que la causa próxima del choque lo fué que el conductor del vehículo negligentemente dejó de observar y obedecer la señal de peligro.

El accidente tuvo lugar en las afueras de Caguas, en un paso a nivel de una carretera de mucho tránsito, vía principal

entre San Juan y Ponce. Teniendo las instrucciones debidas, el jurado tal vez hubiera llegado a la conclusión de que el haber dejado la United Porto Rico Sugar Company de reponer los ganchos rotos y de colocar y mantener cadenas o alguna otra barrera adecuada, o un guardabarrera más digno de confianza, en el paso a nivel, fué la causa próxima del choque, no obstante la negligencia crasa o el descuido del maquinista o guardabarrera, o de ambos.

El efecto acumulativo de los errores cometidos por el juez de distrito en sus instrucciones al jurado es demasiado serio para que se le pase por alto. La regla de que errores en las instrucciones dadas al jurado no serán notados en apelación cuando no se tomen excepciones y el juez en su consecuencia se ha visto privado de la oportunidad de corregir sus errores, no es de aplicación a un caso de esta naturaleza. Nuestra única duda surge respecto a si el caso debe ser devuelto o si debe absolverse al acusado. Toda vez que puede haber lugar a divergencia de criterio en torno a si el acusado debe ser sometido a un nuevo juicio, nos inclinamos a dejar esta cuestión al sano criterio y al sentido de justicia del fiscal de distrito. Habiendo decidido seguir este curso, nos abstendremos de continuar discutiendo la prueba.

*Debe revocarse la sentencia apelada y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.