EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
RADAMÉS CINTRÓN, acusado y apelante.

Núm. 8522.—*Sometido:* Marzo 21, 1941.   *Resuelto:* Marzo 28, 1941.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados del apelante; *Hon. Procurador General George A. Malcolm* y *R. A. Gómez, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Radamés Cintrón fué acusado y declarado culpable de un delito de infracción al artículo 328 del Código Penal. La acusación en este caso dice así:

"El referido acusado Radamés Cintrón, con anterioridad a la fecha de la presentación de esta acusación, o sea, el día 30 de abril de 1939, y en el término municipal de Ciales, P. R., que forma parte del distrito judicial de Arecibo, P. R., allí y entonces, mientras guiaba como *chauffeur* el automóvil marca Pontiac núm. 1240 por la carretera que conduce de Ciales a Manatí, P. R., que es un camino público, y al llegar al kilómetro 11, hectómetro 2, donde hay una gran curva, y mientras marchaba en dirección a Manatí, P. R., ilegal, y voluntariamente, sin guardar la debida prudencia, cuidado y circunspección, y estando dicho acusado en estado de embriaguez, guiando dicho vehículo de motor a una velocidad excesiva por dicho camino público, por negligencia temeraria y descuido desvió dicho automóvil hacia la orilla derecha de la carretera, metiéndose al batey de la casa del señor Rafael Martínez Rodríguez y dejándolo chocar con un árbol de aguacate que hay allí, a consecuencia de cuyo choque ocasionó varias heridas graves a Iraida Muñoz McCormick (ser humano), que viajaba en dicho automóvil, cuyas heridas le produjeron la muerte en la Clínica Mimiya en Santurce, P. R., el día primero de mayo de 1939."

El acusado apela de la sentencia que le impuso la Corte de Distrito de Arecibo condenándolo a cumplir un año y seis meses de presidio. Siete errores atribuye a la corte inferior, los que pasamos a considerar separadamente. El primero dice así:

"Cometió error sustancial y perjudicial al acusado, la corte inferior, al negarse a admitir prueba pericial sobre la rotura del mecanismo que servía para controlar los movimientos del guía del automóvil Pontiac, así como al negarse a ordenar la citación de Enrique Sandoval, la persona que transportó el automóvil desde el sitio del accidente al sitio donde dicho vehículo fué examinado por el perito mecánico."

Para una mejor comprensión de lo ocurrido, es conveniente transcribir el incidente que dió lugar a la no admisión de la prueba pericial ofrecida por el acusado. Después de haberse cualificado, sin oposición del fiscal, como perito mecánico, continuó el interrogatorio del testigo Juan Cruz Almentero así:

"P. ¿Conoce a Radamés Cintrón?—Sí, señor.

P. ¿Dónde?—En Arecibo.

P. ¿Cuándo lo conoció, si lo recuerda?—Hace como cinco meses, más o menos.

P. ¿Dónde lo conoció?—En Arecibo.

P. ¿Con motivo de qué?—Con motivo de que fué a mi taller solicitando los servicios míos como mecánico, como experto, y el día que fué no pude acompañarlo.

P. ¿A dónde?—A Ponce.

P. ¿Fué a Ponce?—Sí, señor; con el joven Radamés.

P. ¿A dónde?—Fuí al taller de la Pontiac.

P. ¿Qué sucedió allí?—Cuando llegamos me dijo a qué me llevaba y entonces me enseñó el carro y me dijo que lo examinara.

P. ¿De qué marca era el carro?—Un Pontiac.

P. ¿Modelo?—1938.

P. ¿Lo examinó?—Sí, señor.

P. ¿Cuál fué el resultado de ese examen?

Hon. Fiscal. Me opongo. No se ha dicho cuándo lo examinó *y se ha dicho que fué a Ponce y no se sabe quién lo llevó allí, a Ponce, y si estaba en la misma condición que en el día del choque.*

P. ¿Quién le identificó el carro?—El joven Radamés, y el mecánico de la casa.

P. ¿Ese carro estaba en buenas condiciones o no?

Hon. Fiscal. Me opongo hasta que no se pruebe, porque va a declarar como perito, *el estado del carro*, y en mi opinión no se puede declarar sobre el estado del carro si ese carro no lo examinó el mismo día del accidente o el día después, *y se demuestra que el carro cuando lo examinó el mecánico estaba en la misma condición que después del choque.*

Hon. Juez. *De la única manera que lo admitiría la corte era que se refiriera al mismo día del suceso.*

Abogado señor Reyes Delgado. Nuestro propósito es el establecer las condiciones internas de la máquina del carro.

Hon. Juez. No lo voy a admitir y que se retire el jurado para que no lo oiga.

Hon. Fiscal. Que se retire el testigo también. El jurado se retira de sala bajo la custodia del márshal.

Abogado Sr. Reyes Delgado. El propósito es demostrar que después del accidente se examinó el carro y que se encontró que el mismo estaba, además de las condiciones visibles a simple vista de una persona profana se examinó su motor y toda su maquinaria (*sic*). (Argumentó).

Hon. Juez. *¿Después del accidente?*

Abogado Sr. Reyes Delgado. *Después, si, señor.*

Hon. Juez. *Menos admisible. Después de un accidente un carro sufre mucho.*

Abogado Sr. Reyes Delgado. Que el carro fué chocado en el lado derecho o izquierdo y que toda esa parte del lado izquierdo o derecho, no sé con fijeza cuál es el lado, estaba destruído con señas y evidencia de haber sido destruído con el impacto que recibió al chocar con el árbol de aguacate, y que la otra parte del carro, izquierdo o reverso, estaba en perfecta condición, con excepción de que hubo en un mecanismo en el bloque, donde no había señas que hubieran llegado los graves efectos del impacto, había un pequeño mecanismo que estaba roto y que sirve para controlar los movimientos del guía del carro, etc. (Argumentó).

Hon. Fiscal. Mi oposición no es el que el compañero pruebe cómo quedó el carro después del accidente por dentro o por fuera. *Mi oposición es a la forma como se trae la prueba.* En otras palabras: el testigo ha declarado que es mecánico y examinó el carro en Ponce. No nos ha dicho en qué fecha lo examinó y puede haber

sido días después o un mes después, *y no ha dicho quién llevó el carro de Ciales a Ponce y en manos de qué personas estuvo y si estaba en la misma condición en que estaba el día del accidente.  Existe la posibilidad de que ese carro, durante todo el trayecto de Ciales a Ponce, haya estado en otro taller y le hayan roto una pieza y el mecánico la encuentre rota y es una, prueba que puede preparar el acusado. Ahora, si se demuestra que estaba en el mismo estado, que no lo tocó nadie y lo llevó una persona a Ponce y estuvo guardado en un sitio y el acusado no lo pudo tocar, entonces.*

Ambas partes argumentaron.

Hon. Juez.   Sostenida la objeción del fiscal.

Abogado Sr. Reyes Delgado.   Solicitamos que se ordene la citación de Enrique Sandoval, la persona que condujo el automóvil del sitio de los sucesos al almacén de la casa Pontiac en Ponce.

Hon. Juez.   La corte no puede suspender el juicio para esperar a ese testigo.   Ese testigo debió ser traído por la defensa, si quería probar su caso en una forma admisible, y la corte la citación ahora la deniega.''   (Itálicas nuestras.)

Después de anotar su excepción el abogado defensor, la corte dijo lo siguiente:

''Hon. Juez.   La corte hace constar, que admitirá cualquier prueba sobre un examen del carro en el sitio donde ocurrieron los sucesos, por un mecánico, en el momento o algún tiempo después; pero esa prueba, después que un carro ha sido trasladado a Ponce, no podría nunca ser admisible, mucho más cuando había sucedido un choque y no podría nunca determinarse si cualquier desperfecto que se notara en el carro en Ponce hubiera sido causa del traslado y con motivo también del choque que había recibido, violento, al chocar contra un árbol en la carretera.   Sería una prueba que confundiría al jurado.''

El error imputado envuelve dos fundamentos, primero el no haber permitido la corte al perito mecánico declarar sobre el resultado del examen que hizo en Ponce del automóvil del acusado, y segundo, el haberse negado a citar al testigo Sandoval suspendiendo la vista del caso hasta que llegara.

Argumentando el primer fundamento el apelante cita jurisprudencia para sostener que la prueba pericial ofrecida era admisible y que la objeción del fiscal y la resolución de

la corte podían afectar, a lo sumo, el peso que a dicha evidencia podía darle el jurado.

Convenimos con el apelante que los motivos expuestos por el juez de la corte inferior al no admitir esta prueba fueron, en parte, erróneos, pero la resolución en sí, no lo fué. No hay duda alguna de que prueba pericial, en casos apropiados y sentándose las bases necesarias, es admisible para demostrar las condiciones en que quedó un automóvil u otro vehículo después de un accidente. 11 R.C.L. 630, sec. 50; 5 Am. Jur. 862, sec. 653, y véase la anotación en 77 A.L.R. 559.

Pero es requisito indispensable demostrar primero que el automóvil, en el momento en que fué examinado por el perito está en las mismas condiciones en que quedó después del accidente y que no ha sido objeto de manipulaciones que hayan podido variar dicho estado. Queda a la discreción judicial determinar, en este caso, si debe o no admitir la prueba, no siendo el tiempo transcurrido desde el accidente hasta el examen el factor principal a considerar, sino si se ha probado que el vehículo está en las mismas condiciones en que quedó al ocurrir el accidente.

En la anotación en 129 A.L.R. 438 se expone la regla a seguir, así:

"En general, evidencia en cuanto a la condición de un automóvil después de un accidente puede ser admitida como un medio para determinar la responsabilidad por el accidente, cuando la evidencia no es muy remota del día en que ocurrió el mismo, y *cuando se prueba que la condición del automóvil no ha cambiado desde el accidente.* Si la evidencia ofrecida es algo remota del día del accidente puede que no tenga tanto peso como aquella que se refiera a condiciones existentes al momento en que ocurrió, pero la admisibilidad de tal evidencia no será afectada. *Por otra parte, si no hay prueba demostrando que la condición del automóvil después del accidente no ha cambiado, desde que ocurrió éste, evidencia en cuanto a la condición del automóvil después del accidente no es admisible.*" (Itálicas nuestras.)

Entre los casos que han aplicado esta regla están los de *Cleasby* v. *Taylor* (1934) 176 Wash. 251, 28 P. (2d) 795;

*Rotche* v. *Buick Motor Co.* (1934) 358 Ill. 507, 193 N. E. 529; *Kelly* v. *Huber Baking Co.* (1924) 145 Md. 321, 125 A. 782; *Ison* v. *Stewart*, 94 P. (2d) 701; *Rix* v. *Rix* (1932) 85 N. H. 529, 161 A. 38; *Neal* v. *Smith*, (1914) 147 N. W. 183.

En el caso de *Cleasby*, supra, se resolvió que prueba en cuanto al estado del automóvil del demandado (abolladuras en el guardalodo y condición de los faroles delanteros) cuarenta días después del accidente fué erróneamente admitida, cuando los testigos no especificaron que el estado del automóvil era igual al que existía inmediatamente después del accidente.

El caso de *Rix*, supra, fué uno extremo, pues la evidencia admitida se refirió a las condiciones del automóvil dos años después del accidente, pero, en apelación, se sostuvo que no se cometió error pues era discrecional en la corte su admisión. Pero en este caso se probó, previamente, que el vehículo había permanecido en un garage desde el día del accidente sin haber sido manipulado ni reparado.

En el de *Rotche*, supra, se resolvió que había sido errónea la admisión de evidencia para probar el estado de ciertos pasadores del freno de un automóvil varias semanas después del accidente sin que se hubiera probado antes que el estado de dichos pasadores no había cambiado desde que ocurrió el accidente.

Somos de opinión que esta regla, que es la que sirvió de base a la objeción formulada por el fiscal a la declaración del perito, es la que debe prevalecer, pues de lo contrario sería muy fácil variar el estado en que quedó un vehículo después de un accidente y luego tratar de probar que fué un defecto mecánico del mismo el que motivó el accidente. Por eso decimos antes, que si bien los motivos expuestos por el juez de la corte inferior al no admitir la declaración del perito Almentero fueron erróneos, ya que dió la impresión de que esta clase de prueba nunca es admisible, su resolución debe ser sostenida en apelación, por no haber el acusado sentado las bases para que dicha prueba fuera admisible. Y esto

nos lleva a considerar el segundo motivo del error imputado, o sea, la negativa del juez a expedir citación al testigo Sandoval, que fué el que se dice llevó el automóvil del acusado desde el sitio del suceso hasta Ponce, suspendiendo la vista del caso mientras llegaba dicho testigo.

Al comenzar la vista del caso en la corte inferior las partes anunciaron que estaban listas para el juicio y esto implicaba que tenían sus testigos en la corte. Este tribunal, en el caso de *Pueblo* v. *Sarria,* 57 D.P.R. 882, resolvió que no abusa de su discreción el juez que se niega a citar un testigo del acusado cuando la moción al efecto se presenta después de haber terminado toda la prueba de cargo y de descargo, en un juicio bastante largo y cuando el testigo tenía que ser citado en Río Piedras para comparecer en Ponce. En el caso de autos ya había terminado la prueba de cargo y la del acusado quedó, de hecho, terminada al no haber podido declarar el perito Almentero, pues el acusado no sentó las bases para que pudiera hacerlo, dependiendo dichas bases precisamente de la presentación de otros testimonios que demostraran el estado del automóvil al ocurrir el accidente y el hecho de que no había sido manipulado desde ese momento hasta aquél en que lo examinó el perito mecánico. El acusado debió haber tenido esa prueba en corte y no se hizo esfuerzo alguno por él para demostrar los motivos que hubieran podido existir por qué el testigo Sandoval no había comparecido con los demás testigos del acusado y puesto bajo las reglas de la corte. Tampoco se demostró si el testigo Sandoval estaba en la ciudad de Arecibo, que era donde se estaba celebrando el juicio, o si residía en Ponce, ciudad a la que llevó el automóvil. A falta de dicha demostración, no abusó de su poder discrecional el juez al negarse a suspender el juicio mientras se localizaba, citaba y comparecía dicho testigo. Además, con la sola declaración de dicho testigo no hubiera podido llenarse la laguna que existía en la prueba del acusado para dejar sentadas, previamente, las bases necesarias a la admisión del testimonio del perito Al-

mentero.   Se dijo que Sandoval declararía que fué él quien
llevó el automóvil desde el kilómetro 11 de la carretera de
Ciales a Manatí hasta Ponce.   La prueba de cargo demostró
que el automóvil permaneció en el sitio del accidente tres días
y además no sabemos cuántos días estuvo en el garage en
Ponce hasta el momento en que fué examinado por el perito
Almentero.   Al acusado incumbía probar la teoría de su
defensa y, para hacerlo, debió haber presentado la prueba
necesaria para demostrar que el automóvil no fué manipu-
lado durante los tres días que estuvo en la carretera y, asi
mismo, durante el tiempo que estuvo en el garage.   La sola
declaración del testigo Sandoval en cuanto a que llevó el
automóvil desde el sitio del suceso hasta Ponce no hubiera
hecho admisible la declaración del perito Almentero.

■   Debe desestimarse el primer error.   El segundo dice
así:

"II.  Cometió grave error el juez sentenciador al instruir al jurado
en la siguiente forma: 'El acusado dice que algo pasó en el auto-
móvil que el guía no respondía;  que hizo esfuerzos para sostener
el control, pero que no pudo y se fué hacia un árbol.   Ahora ustedes
tienen que determinar si ustedes han creído eso o si ustedes han
creído que el acusado venía a una gran velocidad;  si había tomado
licor, es decir, *que su temperamento estaba en tal forma* que si bien
él podía guiar, *no tenía el control de la persona que está sobria* y que
al tomar la curva y *debido a la velocidad a que venía ese automóvil,*
entonces ustedes pueden determinar *si esa gran velocidad y ese estado
de ánimo que él traía* le produjeron el descuido, la falta de pericia en
que no pudo dominar el carro y que el carro se fué hacia el batey de
la casa y produjo la muerte y los daños de que nos ha hablado la
prueba.' "

Arguye el apelante que el juez asumió la certeza de los
hechos que aparecen en itálicas en la instrucción copiada,
porque los expresó en presente de indicativo y en forma
afirmativa, lo que no permitió que el jurado fuera el que
determinara si se probaron esos hechos y si ellos constituyen
descuido o imprudencia temeraria.   Leída a la ligera la ins-
trucción podría interpretarse en esa forma, pero a poco que

se analice se verá que el juez sometió una disyuntiva a ser resuelta por el jurado en su apreciación de la prueba de una y otra parte. Primero expone la teoría del acusado: que algo le pasó en el guía del automóvil, que hizo esfuerzos por sostener el control, pero no pudo y se fué hacia un árbol. Inmediatamente le dijo al jurado *que ellos tenían que determinar* si creían eso *o* si creían que el acusado venía a gran velocidad, *si* había tomado licor, que su temperamento estaba en tal forma que si bien podía guiar no tenía el mismo control que la persona que está sobria y debido a la velocidad que traía, entonces *ellos podrían determinar si* esa velocidad y ese estado de ánimo le produjeron el descuido y falta de pericia que motivó el que no pudiera dominar el carro. El juez no dió por probada ni la teoría del acusado ni la del fiscal, sino que las sometió al jurado para que determinara si una u otra debía prevalecer y, siendo esto así, carece de méritos el error imputado.

Los señalamientos tercero y cuarto, que también se refieren a las instrucciones, pueden resolverse conjuntamente. Dicen así:

"III. Erró seriamente la corte de distrito al transmitir al jurado instrucciones definiendo el delito imputado al acusado e ignorando la esencial distinción entre la negligencia civil y la negligencia crasa y criminal requerida por el artículo 328 del Código Penal.

"IV. Cometió error sustancial y perjudicial a los derechos del acusado el juez de la corte inferior al instruir al jurado que el acusado había cometido el delito que se le imputaba si se había demostrado que él fué descuidado o negligente, pasando por alto la cuestión de causa próxima."

Las instrucciones afectadas por estos señalamientos son las siguientes:

"Los señores del jurado tienen que fijarse en que la ley dice, imprudencia temeraria o descuido. Es decir, que el fiscal no tiene que probar que el acusado tuvo voluntad en el acto, o sca, en el choque que ocasionó la muerte. Lo que tiene que presentar el fiscal es un caso del que resulte que ese choque se debió a imprudencia temeraria o des-

cuido del acusado. Es decir, que no es un delito en que se necesite que sea voluntario, como el homicidio, sino que es un delito que lo que se pena es el descuido, la negligencia de la persona.

"Un descuido o imprudencia temeraria es aquella conducta descuidada o falta de pericia, *grave,* que pone en riesgo indebido de muerte o de daño a otras personas. El descuido o la imprudencia temeraria se demuestra por las circunstancias que resultan del hecho mismo que ha sido motivo del accidente. Es decir, que hay. que deducirlo, pero deducirlo lógicamente de aquellas circunstancias que rodearon el accidente para poder entonces con lógica razonable deducir si en realidad hubo tal descuido o imprudencia temeraria, *grave,* en el caso. ¿Cómo se puede determinar esa circunstancia? Por la prueba que aquí se ha presentado. Es decir, que los Sres. del Jurado para determinar si hubo tal descuido o imprudencia temeraria no tienen que ir a buscar suposiciones fuera de la evidencia que aquí se ha presentado, sino la conclusión a que tienen que llegar de si hubo o no descuido tiene que surgir de la evidencia, del conjunto de la evidencia presentada aquí por ambas partes." (Itálicas nuestras.)

‹‹※          ※          ※          ※          ※          ※          ※

"Si los Sres. del Jurado, después de examinar toda la prueba en conjunto y fuera de duda razonable llegan a la conclusión, que Radamés Cintrón, allá para el 30 de abril de este año y mientras guiaba un automóvil *lo hizo en tal forma descuidada y con imprudencia temeraria, descuido e imprudencia temeraria grave y que a virtud de ese descuido e imprudencia temeraria se desvió y al desviarse chocó contra un árbol y a virtud de ese choque se produjeron heridas* a la Srta. Iraida Muñoz McCormick, *de las cuales falleció,* Sres. del Jurado, vuestro deber es traer un veredicto de culpable.

"Si los Sres. del Jurado después de examinar toda la prueba en conjunto, en forma imparcial llegaran a la conclusión de que Radamés Cintrón *no fué o no cometió ningún descuido o imprudencia temeraria* y que el choque que ocasionó la muerte de Iraida Muñoz *obedeció a otra cosa que no fuera ese descuido,* es decir, *ajeno a su control,* o si los Sres. del Jurado tienen duda razonable de si el acusado es culpable, en cualquiera de ambos casos deben traer un veredicto de no culpable." (Itálicas nuestras.)

Cita el apelante los casos de *El Pueblo* v. *Rodríguez,* 47 D.P.R. 600 y *El Pueblo* v. *Agosto,* 50 D.P.R. 462, en los que esta corte revocó las sentencias porque las instrucciones eran

en substancia y efecto en el sentido de que cualquier descuido u omisión, equivaliera a un descuido craso o no, era suficiente para justificar un veredicto condenatorio y que, las instrucciones en el caso de autos, son iguales o parecidas a las transmitidas en dichos casos.

El caso de *Rodríguez,* supra, no fué revocado porque las instrucciones fueran erróneas sino porque este tribunal consideró que la prueba aportada no era bastante para justificar un veredicto de culpabilidad, no siendo, por lo tanto, aplicable.

En cuanto al de *El Pueblo* v. *Agosto,* es cierto que fué revocado por la insuficiencia de las instrucciones en cuanto a que el juez se limitó a decir que cualquier descuido u omisión de un deber, equivaliera o no a un descuido craso era suficiente, y además porque pasó por alto y no dió instrucciones sobre la cuestión de la causa próxima.

En el caso de autos el juez no se limitó a seguir las palabras del estatuto al definir la infracción al artículo 328 del Código Penal sino que repetidas veces llamó la atención del jurado hacia el hecho de que el descuido o imprudencia temeraria tenía que ser "aquella conducta descuidada o falta de pericia, *grave,* que pone en riesgo indebido de muerte o de daño a otras personas." Pudo haber sido más amplia, más específica la instrucción, pero no puede sostenerse que sea a tal extremo defectuosa que el jurado fuera inducido a error perjudicial para el acusado.

Tampoco tiene razón el apelante al decir que la corte no instruyó al jurado en cuanto a la causa próxima del accidente. El penúltimo párrafo de las instrucciones antes citadas cubrió esta cuestión debidamente. No se usaron por el juez las palabras "causa próxima", pero al decirle al jurado que si después de examinar la prueba resolvía que el acusado mientras guiaba el automóvil lo hizo en tal forma descuidada y con imprudencia temeraria grave, que fué a virtud de estos hechos que el carro se desvió y chocó con el árbol y como consecuencia del choque se produjeron las heridas a

la Srta. Muñoz, de las cuales falleció, les estaba diciendo que tenían que resolver si esos hechos fueron o no la causa próxima de la muerte.

La situación que surgió en el caso de *El Pueblo* v. *Agosto,* supra, fué muy distinta. Allí se trataba de un choque entre la locomotora de un tren y un automóvil, en un paso a nivel, estando envuelta además la conducta observada por un guardabarrera, y esta corte resolvió que si le hubiesen dado las instrucciones debidas al jurado pudo haber concluído ''que la causa próxima del choque lo fué que el conductor del vehículo negligentemente dejó de observar y obedecer la señal de peligro.''

En el caso que resolvemos la prueba no presentaba ningún hecho semejante o parecido. No se probó que la intervención de alguna otra persona pudiera haber sido la causa próxima del accidente que requiriera una instrucción específica como la que se consideró indispensable en el caso de *Agosto,* por las circunstancias especiales que en él concurrieron.

El quinto señalamiento dice así:

''Erró el juez sentenciador al instruir al jurado respecto a que existe una presunción de que el conductor de un auto es descuidado y tiene falta de pericia de la requerida por el artículo 328 del Código Penal cuando se demuestra que dicho conductor va a gran velocidad, que ha tomado y que se desvía de la carretera y penetra en una propiedad fuera del camino público, ya que al así instruir al jurado el juez sentenciador creó una presunción legal que no existe y suplió la prueba del fiscal con un elemento adicional de evidencia.''

Se refiere este error a aquella parte de las instrucciones que dice así:

''Señores del Jurado: Debo también instruiros, *que a falta de una prueba convincente se presume que un conductor de automóvil* que va a gran velocidad y que ha tomado y que se desvía de la carretera y penetra en una propiedad fuera del camino público *la presunción legal en ese caso, si quedara probado todo eso, es que el conductor fué descuidado y tuvo falta de pericia, o sea, falta de cuidado y falta de pericia de que nos habla el artículo 328 del Có-*

*digo Penal, porque todo conductor de automóvil, cuando está co-*
*giendo una curva tiene la obligación de reducir la velocidad y tiene*
*la obligación de mantenerse en la carretera, a no ser que algo que*
*no obedezca a su descuido o voluntad le haga tomar otro curso.''*
(Itálicas nuestras.)

Ha sido esta instrucción la que más nos ha hecho pensar si pudo o no haber inducido a error al jurado, pero el mismo apelante admite en su alegato que ''es correcto afirmar, quizá, que los hechos que la instrucción menciona constituyen, de ser creídos y a falta de una prueba en contrario y de ser los mismos la causa directa y próxima del choque, una infracción al art. 328.''

Veamos cuál fué la evidencia presentada a la consideración del jurado.

La prueba del fiscal tendió a demostrar que el acusado después de haber tomado licor en Ciales, iba guiando un automóvil, a una velocidad exagerada, por la carretera que conduce a Manatí; que la velocidad que llevaba era tan grande que dos personas que íban por la carretera tuvieron que tirarse a la cuneta para evitar ser arrollados; que al llegar a una curva en el kilómetro 11 de dicha carretera se salió de ella, entró al batey de una casa arrollando a tres personas que allí habían y fué a chocar contra un árbol de aguacate; que el impacto con el árbol fué tan fuerte que la Srta. Muñoz, que iba sentada al lado del acusado, fué lanzada y pillada entre la puerta del automóvil y el árbol, ocasionándosele como consecuencia la fractura de la pelvis, la perforación del peritoneo y golpes en la cabeza que fueron la causa de su fallecimiento al día siguiente; que el aliento del acusado era alcohólico y su comportamiento después del accidente como el de una persona embriagada; que él también recibió una pequeña herida de carácter leve en la frente; que dentro del automóvil se encontró una botella de whiskey a medio tomar y unos vasos sanitarios; que dicha botella fué comprada por el acusado en Ciales y destapada en la casa de un amigo y de ella se tomaron dos ''high balls''

momentos antes de salir hacia Manatí. Se probó que no había ningún obstáculo o vehículo en la carretera en el momento del accidente.

El acusado, al declarar, admitió que él había comprado la botella de whiskey en Ciales y tomó dos high balls, y asimismo que llevaba la botella en el automóvil, pero negó que hubiera bebido en el camino o que estuviera embriagado; negó que fuera caminando a una velocidad exagerada, y explicó el accidente como uno debido a que el guía no le respondió cuando entró a la curva, y como consecuencia el automóvil se salió de la carretera y fué a chocar con el árbol a pesar de él haber metido los frenos. Su otra prueba tendió a demostrar que no estaba ebrio después del accidente y que no corría a velocidad exagerada.

El artículo 5 inciso (*l*) de la Ley núm. 75, para reglamentar el uso de vehículos de motor en Puerto Rico, aprobada el 13 de abril de 1916, dispone que "ninguna persona podrá manejar un vehículo de motor mientras estuviere en estado de embriaguez", y las violaciones a dicha ley se consideran delitos menos graves de acuerdo con su artículo 19.

En el año 1912, mucho antes de entrar en vigor dicho precepto legal, esta corte en el caso de *El Pueblo* v. *De Jesús,* 18 D.P.R. 960, había resuelto lo siguiente:

"Nada se dispone en la ley de carreteras, ni en el reglamento de automóviles en relación con el uso de bebidas alcohólicas por parte de los conductores de vehículos. Pero es bien sabido el efecto que tales bebidas causa en los sentidos y en las facultades intelectuales y aun morales de las personas, y cuando aquella que tiene el deber de guiar una máquina que viaja por caminos públicos, acto que requiere el ejercicio de los sentidos y en cierto modo de las facultades intelectuales y morales, toma tales bebidas en exceso embotando voluntariamente sus sentidos y perturbando sus facultades, *puede concluirse que ha sido descuidada en el fiel cumplimiento de los deberes de su cargo.*" (Itálicas nuestras.)

En el caso de *People* v. *Townsend,* 214 Mich. 267, 183 N. W. 177, se resolvió que:

"Constituye negligencia crasa y culpable el que un hombre embriagado guíe y opere un automóvil en una carretera pública y uno que así lo hace y que ocasiona perjuicios a otro, causándole la muerte, es culpable de homicidio. Era ilegal para el acusado manejar su automóvil en una carretera pública mientras estaba intoxicado, un hecho ilegal de acuerdo con el estatuto, y malo per se, y constituyó descuido criminal el hacerlo y es culpable de homicidio, si la muerte fué la causa próxima de su acto ilegal."

Y véase 42 C. J. 898, Sec. 603.

Algo similar a la instrucción dada en el caso de autos fué la que se impugnó como errónea, en el de *State* v. *Kline* (1926), 209 N. W. 881, en el que se le dijo al jurado que: "guiar un automóvil estando ebrio es un delito estatutario y la violación de esa ley levanta una presunción de negligencia." Se resolvió que la instrucción era correcta expresándose la Corte Suprema de Minnesota así:

"Desde luego, como se dijo en el caso de *State* v. *Goldstone*, 175 N. W. 892, la violación de un statuto en cuanto al manejo de vehículos de motor . . . no prueba la existencia de negligencia culpable. . . Pero la violación de un estatuto cuya intención es la protección de otro, que causa o resulta en un daño a ese otro, debe sostenerse que es negligencia culpable."

Se cita entonces el estatuto, similar al inciso (*i*) artículo 5, supra, y continuó diciendo la corte:

"Fué la intención el hacer ilegal el que una persona ebria manejara un carro. Evidentemente esto fué para salvaguardar la vida, persona y propiedad. *Y la corte estuvo claramente correcta al decirle al jurado que la presunción es que, cuando una persona maneja un automóvil en violación de la ley, es negligente.* Pero la corte tuvo cuidado al dejar al jurado determinar si su intoxicación se demostró de tal modo en su manejo en contra de Stodola (el perjudicado) que el jurado podía decir que dicho manejo constituía negligencia culpable."

En el caso de autos, la corte inferior advirtió al jurado en su instrucción, que a falta de una prueba convincente y "si quedaba probado que un conductor de automóvil iba a gran velocidad, que había tomado, que se desvió de la carretera y penetró en una propiedad fuera del camino público,

si quedaba probado todo eso" entonces surgía la presunción de que el conductor fué descuidado y tuvo falta de pericia. Todas las premisas se dejaron a la consideración del jurado para ser resueltas de acuerdo con la evidencia presentada.

Bajo todas las circunstancias del caso el jurado estuvo justificado en creer la prueba de cargo, y que la causa próxima del accidente fué la velocidad máxima a que iba corriendo el acusado en su automóvil, unido al hecho de que él no estaba en su estado normal, como consecuencia del licor, que había tomado constituyendo estos hechos indiscutiblemente actos negligentes del acusado. Somos de opinión que el error debe desestimarse.

Por el sexto error se imputa al juez inferior haber demostrado pasión, prejuicio y parcialidad contra el acusado durante la celebración del juicio. Llama la atención el apelante en su alegato a un incidente que aparece a las páginas 67 y 68 de la transcripción de la evidencia, en que dice el apelante que el juez al resolver una objeción del fiscal dijo: "admito prueba de que este testigo vió (al acusado) beber una cantidad de licor, etc.," y más adelante repitió lo mismo así: "La corte ha dicho que puede presentarse prueba, si es que la hay, de cuando se vió beber al acusado, etc."

Hemos examinado las páginas mencionadas y en ellas aparece que lo que el juez dijo fué: "Admito prueba de que este testigo *vió o no* beber (al acusado) etc.," y, "de cuando se *vió o no* beber al acusado."

Es cierto que las palabras "o no" aparecen escritas con tinta, entre líneas, en las páginas mencionadas, pero esta transcripción de evidencia es la original, debidamente certificada por el taquígrafo y aprobada por el juez de la corte inferior y tiene la presunción de ser auténtica a falta de prueba en contrario. (Incisos 15 y 17 del art. 102, Ley de Evidencia, art. 464 Código de Enjuiciamiento Civil, 1933).

El otro incidente a que llama la atención el apelante y que aparece a las páginas 113 y 114 de la transcripción, al

estar anotando el abogado defensor sus excepciones a las instrucciones, no ocurrió en presencia del jurado y no pudo influir para nada en su veredicto  La sentencia impuesta al acusado, tomando en consideración la forma en que ocurrió el accidente y sus consecuencias, es el mejor indicio, como dice el fiscal de este tribunal, de que el juez no actuó movido por pasión, prejuicio o parcialidad.

El séptimo y último error se refiere al hecho de haberse declarado sin lugar una moción de nuevo juicio, cuyos fundamentos eran los mismos errores imputados a la corte inferior y que, en el curso de esta opinión, hemos discutido y resuelto en contra del apelante.

*Debe confirmarse la sentencia apelada.*