Arsenio Martínez, demandante y apelado, *v.* Independence Indemnity Company, demandada y apelante.

No. 4792.—*Sometido:* Diciembre 12, 1929. *Resuelto:* Abril 25, 1930.

*J. H. Brown* y *C. Ruiz Nazario,* abogados de la apelante; *José Sabater,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

La fecha en que ocurrió el accidente origen de este pleito es 3 de agosto de 1925. La de la demanda enmendada que se copia en la transcripción, parece ser 18 de noviembre del mismo año, radicada al siguiente día. La del juicio el 19 de diciembre de 1927, con sentencia en 18 de mayo de 1928, apelada por la demandada en 14 de junio del mismo año, y presentado el alegato en apelación el 26 de enero de 1929. Las partes han tenido tiempo suficiente para defenderse y presentar su caso completo.

Las conclusiones de hecho que aparecen en la opinión de la corte *a quo,* y que son fundamentales de la sentencia apelada son éstas:

## "Hechos.

"(1) Que el día 8 de diciembre de 1924 el demandante y la demandada celebraron un contrato de indemnización por seguro del automóvil marca 'Big Six Touring Car' de siete pasajeros, manufacturado por la Studebaker Corporation, con motor número E. P. 2949 y bajo licencia de Puerto Rico número 3654 expedida por el Comisionado del Interior, propiedad del demandante, por el término de un año, a vencer el día 8 de diciembre de 1925, por virtud del cual contrato dicho automóvil quedó asegurado, además de otros riesgos, contra daños y destrucción del propio automóvil del demandante; y en consideración al pago por parte del demandante a la demandada, de los premios correspondientes, la demandada expidió al demandante su póliza de seguro bajo el número L. M. 012, por la que además de indemnizar por otros accidentes, se obligó la demandada a indemnizar al demandante contra pérdida por razón de daños a o destrucción del automóvil del demandante, incluyendo su equipo unido al mismo, cuando proviniere dicho daño o destrucción por colisión accidental con otro objeto en movimiento o estacionario al manejar dicho automóvil cualquiera persona autorizada por el asegurado, deduciéndose de la indemnización la suma de $50.00 y siendo responsable la compañía aseguradora de la pérdida en exceso de tal montante hasta cubrir el valor actual intrínseco del automóvil al tiempo de su destrucción.

"(2) Que estando vigente dicho contrato de seguro, o sea, el día 3 de agosto de 1925, a las tres y media de la tarde de dicho día, más o menos, mientras el referido automóvil iba manejado por Fernando Vélez, chauffeur debidamente autorizado para manejar vehículos de motor en Puerto Rico, y autorizado expresamente por el demandante para manejar su dicho automóvil, corriendo a velocidad moderada de Mayagüez con dirección a San Juan, adonde iba llamado por el demandante, quien a la sazón se encontraba ocupado en San Juan en sus labores legislativas como senador por el distrito de Mayagüez, al llegar al kilómetro 147, hectómetro 6, de la carretera que de Aguada conduce a Aguadilla, dicho automóvil tropezó con una piedra que se encontraba en medio de la carretera y sin poderlo evitar dicho chauffeur, el automóvil resbaló y se fué por el barranco de la carretera en dicho sitio hasta chocar con un árbol del barranco donde se volcó quedando detenido en dicho sitio.

"(3) Que como consecuencia del accidente relatado el automóvil del demandante sufrió serias averías y daños y el mismo día del accidente el demandante dió aviso por telégrafo a la compañía demandada y tres días después del accidente el demandante estuvo en el

sitio del accidente con Higinio Ferreira, representante de la demandada, acompañados de dos mecánicos, uno por el asegurado y otro por la demandada, para inspeccionar y determinar los daños causados al automóvil del demandante y el mismo día de la inspección la demandada se hizo cargo del automóvil, tomó posesión del mismo y lo hizo llevar del sitio en que ocurrió el accidente al garage de Molinary en Aguadilla, quien por orden de la compañía demandada le hizo algunas reparaciones al automóvil y luego la demandada hizo llevar dicho automóvil al garage de E. Solé y Compañía, en San Juan, para proceder a su reparación, reteniéndose el automóvil desde el 6 de agosto de 1925 hasta febrero de 1926 por la compañía demandada, en cuya última fecha alegando la demandada que el automóvil estaba adecuadamente reparado lo trajo a Mayagüez y requirió al demandante para que lo recibiera si estaba adecuadamente reparado, pero éste después de haberlo examinado por medio del ingeniero mecánico Henry H. Barreda, lo rechazó por no estar adecuadamente reparado.

"(4) Que el demandante cumplió por su parte con todas las obligaciones del contrato de seguro y practicada una inspección ocular por parte de la corte al terminarse la práctica de la prueba, en el garage de Rafael Blanch en esta ciudad donde entonces se encontraba depositado el automóvil por orden de la demandada, encontró que realmente, según alega el demandante, la caja y parte delantera del automóvil han sido remendados; los tapalodos han sido enderezados y pintados; la tapa y el tablero también han sido remendados; el eje delantero está doblado en su punta derecha y la rueda en relación con ese eje está descuadrada; la capota fué sustituída por otra diferente del modelo de esos carros del año 1926; los arcos de los faroles y los ganchos del bonete, que eran niquelados están pintados de negro; la tablilla (*running board*) en su estado primitivo era color caoba y ha sido pintada de azul oscuro; y el tapasol que tenía el automóvil primitivamente no ha sido sustituído y le falta debido al cambio de la capota de otro modelo; y la demandada, no sólo ha empleado un tiempo irrazonable para reparar el automóvil del demandante, sino que no lo ha reparado adecuadamente no estando el demandante obligado a recibirlo. Es sabido que los automóviles de paseo cambian de modelo con frecuencia y un modelo pasa de moda en relativamente poco tiempo. El automóvil del demandante fué dedicado al uso de la familia del demandante para el paseo y el hecho de ser un carro de paseo debe ser considerado en relación con la reparación adecuada a que está obligada la compañía demandada.

"(5) Que el automóvil del demandante fué usado con cuidado y moderación mientras lo tuvo en su poder, no tuvo antes del acci-

dente choque alguno y el agente de la compañía vendedora lo inspeccionaba y engrasaba periódicamente teniéndole en buen estado de conservación; y siendo su valor original de $2,600.00 y deduciendo de este valor una depreciación por uso de más o menos $433.28, en los ocho meses que se usó, la que es razonable y los $50.00 del promedio deducible de acuerdo con lo convenido en el contrato de seguro, el valor de dicho automóvil el día del accidente e inmediatamente antes de ocurrir el mismo, era de $2,116.72, que la demandada no ha pagado al demandante ni en parte ni en todo."

Sustancialmente, los hechos que se declaran probados, son los mismos que se alegaron por el demandante. En la prueba que se presentó en el juicio, se encuentra la póliza del seguro, a la que se une, como parte un llamado "Certificado de colisión de automóvil" cuyo texto nos parece suficientemente claro, en cuanto a establecer las responsabilidades y obligaciones de la compañía aseguradora en los casos de daños reparables, y en los de destrucción del automóvil asegurado, así como en lo que toca a las obligaciones de la otra parte en el contrato. La indemnización comprende los casos de daños con o sin destrucción del automóvil; y se establecen las excepciones, en las que no está comprendido este caso.

Conocemos ya los hechos alegados por el demandante. La demandada presentó una moción eliminatoria, después de una excepción previa, y una contestación en la que se niegan algunos de los hechos esenciales, si bien se admiten la existencia del contrato de seguro, su vigencia en el tiempo en que ocurrió el accidente y el hecho de haber ocurrido éste; negó que se hubiera obligado por el contrato a otra cosa que a pagar el importe razonable de las reparaciones en caso de daños parciales, o el valor actual intrínseco del automóvil al tiempo de su destrucción, si ocurriese, con el descuento de $50; negó que el *chauffeur* que guiaba el automóvil fuera uno autorizado, y que llevara el vehículo a marcha moderada, y tropezara con piedra u otro objeto; admitió algunos de los daños y negó otros, así como negó que el automóvil quedara inservible; negó que el demandante cumpliera con las

obligaciones contraídas por él; alegó que por pura liberalidad de la demandada, ésta ordenó que el automóvil fuera trasladado a un garage de Aguadilla, sin que la demandada se hiciera cargo del mismo, ni aceptara responsabilidad, y que el automóvil fué traído a San Juan y entregado a los agentes de la marca para su reparación, y fué reparado, llevado a Mayagüez y mostrado al demandante, que rehusó recibirlo, sin expresar el porqué de su acto; que en ese tiempo el automóvil estaba en condiciones análogas a las en que se encontraba cuando ocurrió el accidente, negándose que fuera remendado, o que quedara descuadrado, y que los arcos de los faroles y ganchos del bonete tuvieran los defectos que alega el demandante. Esencialmente, como defensas alegó: que la póliza en este caso no cubre accidente por caída o vuelco, a menos que éstos sean consecuencia directa o inmediata de colisión accidental; que tampoco cubre daños por accidente cuando el carro fué corrido a velocidad excesiva, y que lo fué en este caso; que la responsabilidad de la demandada estaba limitada a pagar el valor razonable de las propias reparaciones, y la demandada, por liberalidad, estuvo dispuesta a ese pago, sin reconocer responsabilidad, y así lo expresó al demandante, y por liberalidad le llevó el automóvil a Aguadilla y a San Juan, para reparaciones; que la tardanza en estar se debió a los actos del demandante, quien siempre ha pretendido que la demandada le pagara el valor total del automóvil, y ha querido hacer una ganancia con motivo del accidente. Estas son, en extracto, las alegaciones.

La sentencia de la corte de distrito fué en el sentido de condenar a la demandada a pagar al demandante dos mil ciento diez y seis dollars y 72 centavos, intereses al tipo legal, y las costas.

Contra esta sentencia se ha apelado por la demandada, que somete varios señalamientos de error. El primero se formula así:

"1. La corte de distrito erró al no sostener las excepciones previas a la demanda enmendada y al no declarar que dicha demanda enmendada no adujo hechos suficientes para constituir una causa de acción."

No encontramos nada que nos permita vacilar en la declaración de que tal error no existe. Una demanda que alega la existencia del contrato de seguro, la vigencia del mismo cuando ocurrió el accidente, el convenio sobre obligación de indemnizar en casos de daños o destrucción del mueble asegurado, la ocurrencia del accidente y su causa, la clase de daños recibidos, y la condición de inservible en que quedó el automóvil, el cumplimiento por el demandante de sus obligaciones contractuales, y los hechos que constituyen el incumplimiento de los suyos por la demandada, tiene las condiciones requeridas por la ley, la jurisprudencia, y los tratadistas para que se considere como tal demanda. A los fines de la excepción previa sus alegaciones deben ser tomadas como ciertas, y sobre ellas en su integridad levantarse, o suscitarse, la cuestión de ley.

El segundo señalamiento de error es así:

"2. La corte de distrito hizo caso omiso del contrato entre las partes, tomando como base de su sentencia un convenio inexistente e imaginario así privando a la demandada del debido procedimiento de ley y protección igual de las leyes garantizada por la Ley Orgánica de Puerto Rico y la Enmienda XIV de la Constitución de los Estados Unidos."

Como con razón sostiene el apelado, no hay aquí más que la insinuación, o si se quiere, la acusación de que el juez de distrito no leyó, o no quiso leer el documento en que se contiene el contrato.

En la póliza aparecen las cláusulas a que nos referimos antes. Si de ella no resultan claramente las obligaciones en que, al suscribir el contrato, se constituyen las partes, seguramente no habría donde ir a buscarlas. La compañía aseguradora acepta la obligación de indemnizar al asegurado por pérdidas por daños al automóvil, y por pérdidas por

destrucción del mismo. Y, a nuestro juicio, la corte sentenciadora, vió y estudió la póliza, y la comparó con las alegaciones y de ese estudio y del de la prueba, extrajo las conclusiones que creyó más justas para su decisión.

La parte apelante no especifica en qué o en dónde está la acusada falta de procedimiento legal, y cuáles sean las violaciones de derechos constitucionales que quiera significar en el título de su señalamiento de error; y no vamos a realizar esta tarea, que corresponde a la misma apelante.

■■■ El tercer señalamiento de error se funda en que no hubo prueba para sostener la sentencia.

Realmente, no se indica ni la existencia de manifiesto error, ni la de influencia de pasión, parcialidad o prejuicio. Bastaría quizá esto para que, teniendo a la vista las terminantes y categóricas conclusiones a que en materia de hechos, llegó la corte de distrito, no entráramos en el examen de este señalamiento. Pero la parte hace algunas alegaciones que merecen ser consideradas. Háblase en el alegato de que si bien hubo prueba del valor del automóvil antes del accidente, no la hubo del que tenía después del accidente, ni del costo o valor de las reparaciones necesarias. Pero en este caso, lo que se está alegando es que la demandada no cumplió con las obligaciones de su contrato, y entregó el carro en un estado tal que quedaba inservible, o inútil; ésa es la contención, y a eso tiende la prueba.

No está la sentencia en contra de la ley, como sostiene la apelante en su cuarto señalamiento de error. La parte demandante propuso a la compañía diversas formas de acuerdo, y no vemos que en ninguna de ellas repudiara su contrato, sino que buscara manera de llegar, bien a su cumplimiento estricto, bien a una fórmula sustituta, y acorde con el espíritu del contrato mismo.

Se han citado en esta apelación casos de este tribunal, y es forzoso que de ellos tratemos aquí.

En primer lugar, se ha citado la decisión en *Martínez* v.

*Independence Indemnity Co.*, 36 D.P.R. 860. En ese caso dijimos:

"Por lo expuesto se ve que el apelado estaba bajo la impresión en el juicio de que habiendo alegado la apelante en su contestación que estaba reparando el automóvil la cuestión quedaba reducida a que se resolviera con vista de la prueba de la demandada que el automóvil había sido reparado adecuadamente, como en el caso de *Molina* v. *Porto Rican Lloyd's*, 31 D.P.R. 132, hemos dicho que debe serlo para que el dueño tenga obligación de recibirlo, pues si no era así la compañía tendría que pagar su valor, teoría que no era la de su demanda fundada en destrucción total. En verdad el apelado debió haber enmendado su demanda antes del juicio para alegar, como lo ha hecho después, los daños sufridos por su automóvil, y que no han sido reparados adecuadamente pudiendo así reclamar su valor, pero no lo hizo así confiando, tal vez, en que la compañía trataría de probar una reparación adecuada y no acudiría al tecnicismo de no haberse probado una destrucción total. En vista de esas circunstancias entendemos que la corte inferior no cometió error al estimar que existió una sorpresa excusable para el apelado y no revocaremos la resolución apelada, tanto más cuanto que la justicia requiere en este caso que la compañía pague el valor del automóvil o demuestre que lo ha reparado adecuadamente.

"También dice la apelante que no debió ser admitida la demanda enmendada presentada con la moción solicitando se dejase sin efecto la sentencia por no ser la acción que en ella se ejercita germana de la aducida en la demanda original. Ahora se reclama el valor del automóvil alegando que los desperfectos que sufrió no han sido reparados adecuadamente, y por lo que conocemos de la demanda original también se reclamó el valor de dicho vehículo por haber sido destruído totalmente, por lo que la causa de acción no ha variado ya que cualquiera de las dos demandas daría derecho al apelado a que se le pague el valor del automóvil."

De los hechos expuestos por la corte de distrito aparece que el automóvil no fué reparado debida o adecuadamente. El calificativo de *remendado* que usa la parte demandante, y lo mismo la corte, parece ser el que mejor responde a lo que el juez observó en la inspección ocular. Si el automóvil no ha sido reparado en forma adecuada, ni en forma alguna que pueda utilizarse como un automóvil de paseo, y así

aparece de la opinión del juez de distrito, la indemnización debe ser el valor del mismo aunque de ese valor debe deducirse el que tuvieran los restos del mismo automóvil.

La decisión en el caso *Muñiz* v. *Aetna Casualty & Surety Co.*, 38 D.P.R. 839, no está en conflicto con lo que ahora sostenemos, ni ha enmendado en forma alguna la doctrina legal sustentada por este tribunal. Antes por el contrario, en ella se cita y confirma la teoría de *Molina* v. *Porto Rican Lloyd's*. En esencia, la base y fundamento de esa doctrina se halla, de una parte, en la circunstancia de que se haya alegado la destrucción, o se hayan alegado simplemente desperfectos reparables. Para la destrucción de un mueble no es necesario que éste haya quedado reducido a piezas o partículas, sino que el daño haya sido de naturaleza tal que una reparación no sea suficiente para devolver al mueble su condición de ser usado, destinado a sus verdaderos fines, y no a otros para los que no fué construído.

En el caso *Muñiz* v. *Aetna Casualty & Surety Co.*, *supra*, se cita de la opinión en *Molina* v. *Porto Rican Lloyd's*, lo que sigue:

" '2. Veamos ahora el primer pronunciamiento de la sentencia, o sea si se hizo o no una reparación adecuada. No estamos conformes con el criterio absoluto expresado por el juez sentenciador en su opinión en el sentido de que sea siempre necesario sustituir por piezas nuevas las averiadas. Si en vez de decir averiadas hubiera dicho rotas, o averiadas de tal modo que fuera imposible volverlas a su condición primitiva, sería distinto. Y en realidad de verdad lo último es lo que demuestra la prueba que ocurrió en este caso. De ahí que no constituya error perjudicial el indicado. No ya la prueba del demandante, sino la propia prueba de la demandada demostró que, por lo menos en cuanto al *chassis*, la reparación no fué adecuada.

" 'Reparar, según la misma jurisprudencia citada por la apelante, significa restaurar a su condición primitiva, y un *chassis* roto, partido, no queda reparado adecuadamente, esto es, restaurado a su condición primitiva, haciéndole un refuerzo interior con remaches como se hizo en este caso.''

En ese mismo caso *Muñiz* v. *Aetna etc.* se distingue

siempre el hecho de que haya habido destrucción del hecho de que haya sólo desperfectos reparables. A más en ese caso hubo la alegación de daños que consistían en los desperfectos sufridos, que fueron reparados, quedando el automóvil útil para prestar servicios. Dijimos allí:

"Se alegan ciertos desperfectos consecuencia directa del choque o colisión; y de las alegaciones y la prueba aparece que esos desperfectos fueron reparados, sin que haya indicación de que el automóvil no quedara en buen estado; y, antes por el contrario, probado que el demandante ordenó y pagó la reparación, y aceptó el automóvil después de la misma, la creencia racional es que el automóvil quedó en buenas condiciones."

Como se ve, las condiciones son completamente distintas.

En el caso *Martínez* v. *Independence Indemnity Co.*, 36 D.P.R. 859, se ha declarado la doctrina en esta jurisdicción, de una manera categórica y precisa. O se repara el automóvil en forma adecuada, o se paga el valor del mismo; y esto es lo "que la justicia requiere".

No encontramos justificación a los señalamientos de error que presenta la apelante. Esta se queja de que en la forma en que está la sentencia, el demandante cobra el valor del automóvil, y se queda con éste. Entendemos que en ningún caso puede hacerse tal interpretación. Por la opinión y por la sentencia se ve que el valor original del automóvil era de $2,600; de este valor se hace la deducción de $433.28, por concepto de depreciación, y $50, con arreglo al contrato de seguro, y se fija el valor en el día en que ocurrió el accidente de $2,116.72, a cuyo pago se condena a la demandada. No cabe interpretar en un sentido que permita a la parte demandante cobrar íntegro el valor del automóvil, y quedarse con él. Debe entenderse que los derechos de la demandada a retener el automóvil cuyo valor ha pagado, quedan siempre a salvo.

*La sentencia apelada debe ser confirmada, sin perjuicio del derecho de la demandada en cuanto a retener el automóvil, o lo que de él subsistió.*