ISABELO FIGUEROA PIZARRO y BANCO POPULAR DE PUERTO RICO, demandantes y recurridos, *v.* WESTERN ASSURANCE Co., demandada y recurrente.

Número: 459    Resuelto: 25 de enero de 1963

*F. Fernández Cuyar*, abogado de la recurrente; *Carlos E. Colón*, abogado del recurrido Figueroa Pizarro; *Gabriel de la Haba, Rafael Baragaño, Jr., y Garrard Harris*, abogados del recurrido, Banco Popular de Puerto Rico.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

En 25 de febrero de 1958 Isabelo Figueroa Pizarro compró un automóvil Buick nuevo por el precio de $4,980.00. Seguidamente lo aseguró con Western Assurance Company contra el riesgo de colisión, obligándose dicha compañía a pagar, de ocurrir una colisión, los daños reales que sufriera dicho vehículo, hasta la suma de $4,000.00, deduciendo del importe de los daños reales la suma de $50.00. Esta póliza fue endosada a favor del Banco Popular de Puerto Rico, haciéndose constar que el importe de cualquier pago bajo la misma se entregaría a Figueroa Pizarro o al Banco Popular, de conformidad con sus respectivos derechos sobre el vehículo al tiempo de la ocurrencia de los daños. Cinco meses después de comprado el vehículo, en 19 de julio de 1958, dicho vehículo tuvo una colisión mientras transitaba por la carretera que conduce de Barranquitas a Aibonito. Hecha la correspondiente reclamación a la demandada por Figueroa Pizarro, dicha Compañía envió prontamente (18 días después del choque) a un perito competente para evaluar las averías. Dicho perito rindió un informe por escrito al efecto de que por la suma de $1,163.00 podrían repararse las averías, sustituyendo con partes absolutamente nuevas las partes afectadas, y que el vehículo quedaría en perfectas condiciones, igual que antes de la colisión. La inspección de dicho perito y su informe fueron hechos en agosto 6, 1958. Pocos días después la Compañía demandada formalmente ofreció a Figueroa Pizarro pagarle dicha suma de $1,163.00, pero dicho asegurado rechazó la oferta. Entonces, en 4 de septiembre de 1958, la demandada remitió una carta a Figueroa Pizarro ofreciéndole pagar el importe de la reparación o proceder a reparar el automóvil. El asegurado rechazó ambas alterna-

tivas porque exigía que le dieran un carro absolutamente nuevo.

En 20 de febrero de 1959 la demandada fue emplazada con copia de la demanda que Figueroa Pizarro había radicado desde el 22 de agosto de 1958 en que reclamaba $4,400.00 como valor razonable en el mercado de su automóvil, el que alegó haber resultado una pérdida total, más $2,000 por supuesto incumplimiento de contrato por la demandada, más $1,000 para honorarios de su abogado. En dicha demanda no se hacía parte en forma alguna al Banco Popular de Puerto Rico. Catorce días después de emplazada la demandada contestó admitiendo los hechos, negando que la pérdida fuese total, aclarando que la póliza era pagadera a Figueroa Pizarro y al Banco Popular, y afirmando que las averías causadas al vehículo eran reparables a un costo de $1,180.00 que antes había ofrecido, y una vez más ofrecía, pagar al beneficiario que correspondiera, deduciéndole naturalmente los $50 conforme a los términos de la póliza.

Luego de comenzada la celebración del juicio, la demandada llamó la atención del Tribunal hacia el hecho de que el Banco Popular era parte por lo menos interesada en el asunto y radicó una solicitud para que se ordenase su inclusión como parte, notificándole todo lo ya actuado. Se suspendió el juicio, accediéndose a lo solicitado, se notificó al Banco y éste radicó una demanda uniéndose como parte demandante y afirmando que se le adeudaba la cantidad de $3,570.75.

Esta demandada contestó dicha nueva demanda negando en efecto que se adeudase al Banco la referida suma. Posteriormente, se celebró el juicio y en 8 de febrero de 1961 el Tribunal Superior dictó la sentencia de que se querella la demandada.

En verdad, la controversia principal envuelta en este caso gira alrededor del importe de los daños que, de acuerdo con la prueba practicada y admitida, debe recobrar el demandante.

En la vista del caso el recurrido Figueroa Pizarro declaró que el vehículo estaba en perfectas condiciones en el momento del accidente (T.E. pág. 14), y que con motivo del accidente el auto tenía destrozado el motor, la transmisión, su parte delantera, el tren delantero y el chasis completamente doblado. (T.E. pág. 15.) Declaró, pero se eliminó por acuerdo de las partes, que el auto había depreciado de $150 a $200 (T.E. pág. 28), pero en el contrainterrogatorio declaró que pedía el valor del carro menos su depreciación, o sea, $4,400 (T.E. pág. 38); que le costó $4,800 y había depreciado $400 (T.E. pág. 39); que estuvo dos meses sin uso de automóvil hasta que compró otro y le costaba $20 diarios el alquiler de uno, o sea, $100 semanales. (T.E. págs. 55–58.) El perito del recurrido, Sr. Seda, que examinó el auto averiado dos años después del accidente, declaró que no se justificaba el arreglo del vehículo, que éste era una pérdida total (T.E. pág. 100); que "El Front Chasis por el lado izquierdo está partido. El motor se le corrió por encima tirando para el lado derecho y naturalmente para ser exacto había que sacar el motor para saber las piezas damnificadas, porque por encima no podía saberlo. El radiador no servía, ni la bomba de agua, el abanico roto, el chasis estaba partido. En la parte de la hojalatería, todo el frente. . . . El guarda lodo [sic] izquierdo destrozado, el bonete destrozado; esa parte había que reponerse nueva. El grill completo, tapa máquina bumper, gancho del bumper, lo que nosotros llamamos la unidad completa de faroles, molduras, winshield [sic], stealing brake, el volante del guía que eso lo dobló y naturalmente que el carro necesita pintarse completo." Al preguntarle el Juez sobre el estado de los vidrios del parabrisas, el perito contestó: "Estillados. No se pueden usar en las condiciones que estaban." (T.E. págs. 95–97); que no examinó el interior del carro ni su hojalatería; que no sabía si el motor o la transmisión estaban buenos o malos, o si el diferencial estaba roto o no; que lo que afirma es lo que vió por encima

(T.E. págs. 109–113) ; indicó que se basa al decir que no vale la pena arreglarlo (T.E. págs. 113–114), en que no quedaría igual en su funcionamiento después de reparado (T.E. págs. 120 y 121). Habló de su propio estimado de reparación y, a esos efectos, citó la cantidad de $1,200 (T.E. pág. 115) ; que "En mi opinión a la conclusión a que yo llegué para mí, para mis conocimientos en otros automóviles que he reparado en condiciones similares a ese, llegué a la conclusión que es una pérdida total. Eso me lo da a mí la experiencia mía." (T.E. pág. 118.)

El perito de la demandada, Sr. Manuel Arturo Méndez, declaró que examinó el auto en 6 de agosto de 1958; lo levantó con su grúa; hizo un estimado de reparación a base de piezas nuevas que ascendía a $1,163.00 garantizando que hubiera quedado en perfectas condiciones, igual que antes del choque. (T.E. págs. 137–138.)

Con respecto a los hechos, el tribunal de instancia concluyó que "2.—El 19 de julio de 1958 el automóvil del demandante sufrió un accidente al chocar contra otro vehículo mientras transitaba por la carretera insular que conduce de Barranquitas a Aibonito. Como resultado, el auto del demandante sufrió desperfectos de consideración; entre ellos: el 'chasis' partido; el motor se corrió hacia el lado derecho; el radiador y el abanico totalmente destruídos y el guardalodo izquierdo destrozado. También sufrió la destrucción del bonete, la tapamáquina, la parrilla, el 'bumper' delantero, los faroles y las molduras. De la evidencia documental y testifical ofrecida durante la vista surge que sería necesario— en caso de que fuese reparado—sustituir en el vehículo piezas tales como la rueda de guiar, las luces de estacionamiento, el tren delantero izquierdo, el emblema del marco del radiador, la batería, los tapabocinas, el limpiador del parabrisas, la bocina, los marcos de faroles, la manga de los frenos, la palanca de cambios, el cristal ventilador, la antena y otras piezas, cuyo valor total ascendería a $1,398.00. En adición

al costo de las piezas mecánicas a sustituirse, sería necesario pintar totalmente el automóvil y pagar el costo de la mano de obra que se emplearía en las labores de reparación. Luego de reparado el auto no quedaría en las mismas condiciones de funcionamiento que aquellos en que se encontraba con anterioridad al accidente. Tomando en consideración todas esas circunstancias, el Tribunal concluye que el demandante sufrió la pérdida total de su vehículo en el accidente descrito y que la demandada viene obligada a cumplir con sus obligaciones bajo la póliza de conformidad con esta conclusión.

"3. . . . . . . . .

"4. Tomando en cuenta el valor del automóvil al ser adquirido por el demandante, el período de uso y la fecha del accidente, el Tribunal concluye que al ocurrir la colisión el vehículo tenía un valor de $3,500. Surge de los autos que el demandante había pagado al Banco Popular de Puerto Rico plazos ascendentes a la suma de $421.58, adeudando hasta esta fecha a dicha entidad bancaria la suma de $3,148.87."

Y en sus conclusiones de derecho señaló el tribunal que la recurrente está obligada a pagar los daños que sufrió el automóvil con motivo del accidente; que no concede indemnización por el valor del uso ya que se trata de una pérdida total y no parcial; que el Banco Popular debe recibir el importe adeudado por la recurrente, pagándose al recurrido Figueroa Pizarro cualquier suma en exceso—si alguna—luego de los reajustes de rigor; y por último, que no debe prosperar la segunda causa de acción. El tribunal a quo procedió entonces a dictar sentencia condenando a la recurrente a satisfacer al Banco Popular la suma de $3,098.87, y el balance de $351.13 hasta la suma total de $3,450.00 a Figueroa Pizarro, más costas y $600 de honorarios de abogado en proporción de $400 para Figueroa Pizarro y $200 para el Banco Popular de Puerto Rico.

En el recurso de revisión se señalan ocho errores que discutiremos a continuación, alterando un tanto el orden por considerarlo necesario para un más claro entendimiento de las cuestiones planteadas.

1.—Creemos conveniente considerar primeramente el quinto error que se alega consiste en haber permitido el tribunal de instancia, a pesar de las objeciones de la recurrente, que el perito Seda declarase sobre las condiciones en que encontró el vehículo de Figueroa dos años después del accidente sin que se estableciese que el vehículo, al tiempo de tal examen, estaba en condiciones iguales a las que estaba después de ocurrido el accidente, existiendo prueba al efecto de que dichas condiciones habían variado sustancialmente. Se arguye que este razonamiento está sostenido por lo resuelto en *Pueblo* v. *Cintrón*, 58 D.P.R. 384 (1941), en que se sostuvo la objeción del fiscal a que declarase un perito mecánico sobre las condiciones de un automóvil sin demostrarse antes que el vehículo, en el momento en que fué examinado por el perito estaba en las mismas condiciones en que quedó después del accidente y que no ha sido objeto de manipulaciones que hayan podido variar dicho estado. Es necesario aclarar, sin embargo, que ésta no es una regla inflexible, sino que la corte en ese caso señala que "Queda a la discreción judicial determinar. . . . si debe o no admitir la prueba, no siendo el tiempo transcurrido desde el accidente hasta el examen el factor principal a considerar, sino si se ha probado que el vehículo está en las mismas condiciones en que quedó al ocurrir el accidente."

En el caso ante nos, al perito Seda se le mostró una fotografía (admitida en evidencia) del carro tomada pocos días después del accidente y mientras ya se encontraba en el garaje Fao y contestó que estaba en la misma posición en relación con una casa que él lo vió cuando lo examinó; que en la fotografía estaba igual que cuando él lo vió (T.E. pág. 97).

El recurrido Figueroa Pizarro declaró al mostrársele dicha fotografía que la misma mostraba el automóvil tal y como estaba después del accidente. En contrainterrogatorio admitió Seda que un auto a la intemperie deteriora bastante y que se oxida (T.E. págs. 102–103) y además se demostró que al auto le habían quitado las ruedas antes de tomarse la fotografía para guardarlas (T.E. pág. 47). Considerada esta situación en conjunto, no creemos que la corte de instancia abusó de su discreción al admitir el testimonio del perito Seda, ya que las variaciones en las condiciones del auto obradas durante los dos años transcurridos desde el accidente hasta que Seda examinó el auto no cubrían ni alteraban los desperfectos y destrozos (que previamente enumeramos) del vehículo en que Seda basó su conclusión de que no se justificaba la reparación del vehículo y que era una pérdida total. *Koyer* v. *Detroit Fire & Marine Ins. Co.*, 70 P.2d 927 (Cal. 1937).

■ 2.—Se alega como primer error que el tribunal de instancia no tuvo ante sí ninguna prueba en qué apoyar su conclusión de que el vehículo de Figueroa Pizarro tenía un valor en el mercado a la fecha de la colisión ascendente a $3,500. Indica la recurrente que no existe prueba de depreciación del vehículo que justifique tal valoración la cual es esencial cuando se trata de pérdida total, *Torres* v. *González*, 68 D.P.R. 47 (1948), y que la corte no puede hacer tal cálculo de valoración en ausencia de prueba que la justifique. *Boria* v. *Maryland Casualty Co.*, 60 D.P.R. 830 (1942). Se alega que hubo una ausencia total de prueba de valoración. Nuestro examen del récord, sin embargo, nos indica que esto no es así, pues Figueroa Pizarro declaró en contrainterrogatorio que el carro había depreciado $400, de manera que su valor en el momento del accidente montaba a $4,400. Este testimonio no fue desvirtuado ni en forma alguna desacreditado. El dueño de un automóvil, aun sin demostrarse sus cualificaciones puede declarar sobre el valor del vehículo inmediatamente an-

tes del accidente. *Imus* v. *Huber*, 71 N.W.2d 339 (N.D. 1955) ; *Shook* v. *Beals*, 217 P.2d 56 (Cal. 1950) ; *Purington* v. *Newton*, 49 A.2d 98 (Vt. 1946). Es forzoso llegar a la conclusión que la prueba demuestra que el valor del vehículo de Figueroa Pizarro, en el momento en que ocurrió el accidente, ascendía a $4,400 y no a $3,500. Pero, como los recurridos no han atacado esta conclusión del tribunal a quo, no intervendremos con la misma.

3.—Se alega como segundo fundamento del recurso de revisión que la corte de instancia incurrió en error al concluir que el recurrido Figueroa Pizarro sufrió la pérdida total de su vehículo y, a esos efectos, señaló que la corte basó su conclusión en una enumeración de averías sustanciales y en el hecho de que después de reparado el auto no quedaría en las mismas condiciones en que se encontraba antes del accidente; que tales fundamentos no justifican la conclusión de pérdida total, pues eso se podría alegar en todos los casos de colisión en que las averías son sustanciales. Por el contrario, alega la recurrente que Figueroa Pizarro no trató de que le arreglaran el auto (T.E. pág. 16) ; que su perito el testigo Seda declaró que podía arreglarse por $1,200 (T.E. págs. 115–119) ; que se presentó un estimado de reparación del garage Fao (pero el mismo no fue admitido en evidencia por objetarlo el recurrente que ahora pretende invocarlo) (T.E. págs. 125–127) ; que el perito Méndez de la recurrente estimó las reparaciones en $1,163.00 afirmando que de haberse reparado él hubiese garantizado que quedaría en perfectas condiciones (T.E. págs. 137–138) ; que no se puede sostener que hubo pérdida total porque el monto de las reparaciones era sólo una tercera parte del valor del vehículo en el momento del accidente según la determinación de tal valor hecha por la corte de instancia; que la opinión del perito Seda de que el vehículo era una pérdida total carecía de fundamento ya que admitió no saber si había daños en la parte trasera, si los cristales estaban o no rotos, si las puertas abrían o no, si los

cristales funcionaban, si el motor funcionaba o no, si el diferencial o la transmisión estaban rotas, si los frenos estaban bien o no; y que lo que podía declarar es lo que vio por encima.

Hemos examinado cuidadosamente el récord taquigráfico a la luz del anterior análisis y llegamos a la conclusión que el análisis precedente no refleja a cabalidad la situación según se desprende del récord.

Los fundamentos que tuvo la corte para concluir que hubo pérdida total fueron los que se indican anteriormente, pero el récord demuestra, además, que el perito Seda emitió su opinión previamente transcrita fundada en que, a su juicio, el auto no funcionaría igual después de reparado. El récord indica que Figueroa Pizarro no gestionó la reparación del vehículo porque "de ninguna manera quedaba ni la mitad de como era arreglándose. . . . que no se puede arreglar para que quede servible en la forma que se merece ese carro estar servible." (T.E. pág. 18.) Si bien es verdad que el perito Seda ofreció un estimado de reparación de $1,200, no es menos cierto que indicó que todo carro tiene siempre arreglo, pero que hay casos como éste en que el arreglo no puede poner al vehículo a funcionar como antes. Seda no admitió ignorar si había daños en la parte trasera, sino que testificó que en la parte de atrás había una que otra abolladura mínima (T.E. págs. 108–109) ; que vió cristales estillados, el de atrás estaba bien, y otro no sabe porque estaba bajo, él no lo subió. (T.E. págs. 103–106.) En cuanto a las puertas dijo que abrían con dificultad y no que no supiese (T.E. pág. 106) ; en cuanto a los interiores del auto dijo que no los examinó personalmente; y en cuanto al motor, diferencial y transmisión no pudo probarlos, pues las condiciones del auto no se lo permitían (T.E. pág. 109).

■ Nos confrontamos, pues, con un conflicto de evidencia, especialmente en cuanto a los testimonios de los dos peritos. La corte a quo optó por darle mayor credibilidad a la prueba

del recurrido Figueroa Pizarro. No se nos ha mostrado ni encontramos razón alguna para intervenir con la apreciación de la prueba contradictoria hecha por dicho tribunal que oyó los testigos y estaba en mejores condiciones para juzgar su credibilidad. *Colón Calixto* v. *Mendoza*, 83 D.P.R. 303 (1961); *Castro* v. *Meléndez*, 82 D.P.R. 573 (1961).

■ En el caso de *Alliance Mutual Casualty Co.* v. *Atkins*, 316 S.W.2d 783 (Tex. 1958), se estableció que la declaración de un testigo de que el vehículo tiene un valor residual no es equivalente a una declaración en el sentido de que dicho vehículo no tiene valor alguno o de que ha sufrido una pérdida total. Se consideró que esa evidencia era tan débil que de ella sólo surge una sospecha de la existencia del hecho que se desea probar o sea, de que el vehículo había sufrido una pérdida total y, por lo tanto, no constituye evidencia suficiente para sostener una determinación sobre la existencia del referido hecho que está en disputa. En el caso ante nos, como ya hemos demostrado, se presentó evidencia directa y sustancial de la pérdida total del vehículo que el tribunal de instancia aceptó al dirimir el conflicto en la prueba.

■ Creemos, por el contrario, que el testimonio de Seda en el sentido de que hubo una pérdida total del carro porque el vehículo no funcionaría igual después de reparado dio base suficiente para la determinación de pérdida total, en armonía con la doctrina de *Martínez* v. *Independence Indemnity Co.*, 40 D.P.R. 864 (1930), de que "Para la destrucción de un mueble no es necesario que éste haya quedado reducido a piezas o partículas, sino que el daño haya sido de naturaleza tal que una reparación no sea suficiente para devolver al mueble su condición de ser usado, destinado a sus verdaderos fines, y no a otros para los que no fué construido."

■ 4.—Se alega como tercer y sexto errores que el Tribunal Superior no determinó el valor del vehículo después de la colisión para deducirle su valor en el mercado antes de la colisión, enriqueciéndose así injustamente a Figueroa Pizarro

o al Banco ya que podrán o bien arreglar el vehículo y venderlo o venderlo en las condiciones en que está, y retener el producto. Al igual que se dijo en el caso de *Martínez*, cit. supra, debe entenderse que los derechos de la recurrente a retener el automóvil en este caso cuyo valor ha de pagar, quedan siempre reconocidos. Y en caso que el vehículo se hubiere vendido por el banco en pública subasta, el producto de tal venta debe restarse del monto de la sentencia en el caso.

5.—El cuarto error que se alega consiste en concluir el tribunal de instancia que Figueroa Pizarro adeudaba al banco, a la fecha del accidente, $3,148.87, de lo cual no existe prueba alguna, condenándose a la recurrente a pagarle tal cantidad a dicho banco, menos $50.00. Del récord, páginas 22 a la 26, y del Libro de minutas Núm. 8 del Tribunal Superior, Sala de Ponce, aparece que en este caso se admitió en evidencia, a instancias de Figueroa Pizarro, la resolución de la Corte de Distrito en el caso de reposesión del automóvil en cuestión iniciada por el Banco Popular contra Figueroa Pizarro, así como la declaración jurada en ese caso en que se informa que el crédito del banco ha sido reducido a $3,148.87 y que Figueroa Pizarro estuvo conforme con tal resolución. El récord demuestra que el banco manifestó al tribunal de instancia que descansaba en la prueba sometida por Figueroa Pizarro. (T.E. pág. 128.) No procede, sin embargo, que se deduzcan los $50.00 no cubiertos por la póliza de seguros de la acreencia del banco, sino del excedente pagadero a Figueroa Pizarro. En ese sentido debe modificarse la sentencia.

6.—Bajo el séptimo fundamento la recurrente alega como error que el tribunal de instancia no dió valor ni efecto alguno a la cláusula de la póliza que impone al asegurado la obligación de proteger el vehículo cuando ocurre una colisión y de no permitir que sufra adicional o ulterior daño y de que tal daño adicional no sea recobrable bajo la póliza de seguro. Se basa esta alegación en que el auto ha estado a la intem-

perie durante dos años; que han desaparecido sus cuatro ruedas con sus gomas; que había bastante deterioro, oxidación, y corrosión de piezas.

■ No creemos que se ha cometido tal error. Tan pronto ocurrió el accidente, el vehículo fué remolcado al garage Fao en Ponce y allí ha permanecido a la intemperie (T.E. pág. 18), excepto que las cuatro ruedas se las quitaron en el garage para guardarlas (T.E. pág. 47). El vehículo sufrió una pérdida total de manera que el dejarlo dentro del predio de un taller de reparaciones, aunque a la intemperie, pendiente se resolviera la reclamación no podía constituir una violación de la obligación del asegurado de proteger el vehículo contra daño adicional. Sobre todo cuando, siendo necesariamente mínimos tales daños adicionales en vista de que al automóvil sólo le restaba el poco valor atribuible a una pérdida total, no era ni justo ni económico para las partes incurrir en el costo de guarecer bajo techo la ruina del vehículo. Además, la recurrente no aportó prueba alguna de tal daño adicional.

■ 7.—Como octavo y último fundamento de esta revisión se alega que no se debió condenar a la recurrente a pagar $600 de honorarios de abogado a ambos demandantes, ya que la recurrente no fué temeraria. El récord demuestra claramente (a) que la recurrente admitió su responsabilidad y estuvo en todo momento dispuesta a reparar el auto o a compensar el costo de su reparación y (b) que la prueba con respecto a si el vehículo era reparable o era una pérdida total fué conflictiva basándose la contención de cada parte principalmente en las declaraciones de sus respectivos peritos. Bajo tales circunstancias, no creemos que la recurrente ha actuado temerariamente y, por lo tanto, no procede la concesión de honorarios de abogado en este caso.

*Así modificada, se confirma la sentencia.*